UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT SCOTT,                                   [ECF]

                Plaintiff,          10 Civ. 9538 (PKC)(RLE)

   -against-

WORLDSTARHIPHOP, INC.;
BERKELEY COLLEGE,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BERKELEY COLLEGE'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT IN ITS ENTIRETY


**KAVANAGH MALONEY & OSNATO LLP**
**415 Madison Avenue**
**New York, NY 10017**
**Attorneys for Defendant Berkeley College**

{00139165;v1}

## TABLE OF CONTENTS

Page

Table of Authorities ....................................................................................................i

PRELIMINARY STATEMENT........................................................................................1

STATEMENT OF THE ALLEGATIONS ..........................................................................3

PLAINTIFF'S CLAIMS FOR RELIEF..............................................................................8

ARGUMENT ................................................................................................................9

POINT I     PLAINTIFF IS NOT ENTITLED TO ANY RELIEF AGAINST
            DEFENDANT BERKELEY COLLEGE UNDER THE NEW YORK
            CIVIL RIGHTS LAW ...............................................................................10

POINT II    PLAINTIFF HAS FAILED TO ALLEGE A CLAIM FOR
            NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.....................12

POINT III   PLAINTIFF HAS FAILED TO ALLEGE A DISCRIMINATION
            OR RETALIATION CLAIM AGAINST BERKELEY COLLEGE...........13

POINT IV    BERKELEY COLLEGE HAS NOT INFRINGED ANY
            ALLEGED COPYRIGHT POSSESSED BY PLAINTIFF IN THE
            SUBJECT VIDEO ....................................................................................17

            A.    Plaintiff May Not Use His Alleged Copyright To
                  Suppress Evidence Of His Own Wrongdoing And Bar
                  Defendant's Use Of The Video To Defend Itself From
                  Plaintiff's Baseless Claims Of Discrimination .................................18

            B.    Plaintiff's Vague And Conclusory Claim Of
                  "Distribution" By Berkeley College Fails To State A
                  Claim Of Copyright Violation .........................................................22

CONCLUSION .............................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Arrington v. New York Times Co.,
  55 N.Y.2d 433, 449 N.Y.S.2d 941 (1982), cert. denied 459 U.S. 1146, 103 S.Ct. 787
  (1983) ............................................................................................................... 11

Ashcroft v. Iqbal,
  __ U.S. __, 129 S.Ct. 1937 (2009)........................................................................ 9, 10

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................................................... 9, 10, 23

Beverley v. Choices Women's Medical Center, Inc.,
  78 N.Y.2d 745, 579 N.Y.S.2d 637 (1991) .............................................................. 11

Bey v. City of New York,
  No. 99 Civ 3873, 2010 WL 3910231 (S.D.N.Y. Sept. 21, 2010)............................... 5

Bond v. Blum,
  317 F.3d 385 (4th Cir. 2003) ......................................................................18, 20, 21

Brierly v. Deer Park Union Free Sch. Dist.,
  359 F. Supp. 2d 275 (E.D.N.Y. 2005) .................................................................... 14

Broadnax v. Gonzalez,
  2 N.Y.3d 148, 777 N.Y.S.2d 416 (2004) ................................................................ 13

Broughel v. Battery Conservancy,
  No. 07-CV-7755, 2009 WL 928280 (S.D.N.Y. Mar. 30, 2009)...................... 22, 23

Cohen v. Herbal Concepts, Inc.,
  63 N.Y.2d 379, 383, 482 N.Y.S.2d 457 (1984)...................................................... 11

Colorado Capital Inv. v. Owens,
  304 Fed. Appx. 906 (2d Cir. 2008)....................................................................... 13

Davis v. High Society Magazine, Inc.,
  90 A.D.2d 374, 457 N.Y.S.2d 308 (2d Dep't 1982)............................................... 11

Evans v. New York Botanical Garden,
  No. 02 Civ. 3591, 2002 WL 31002814 (S.D.N.Y. Sept. 4, 2002)........................... 5

Farrow v. Allstate Ins. Co.,
  53 A.D.3d 563, 862 N.Y.S.2d 92 (2d Dep't 2008) ............................................... 11

i

Flores v. Mosler Safe Co.,
    7 N.Y.2d 276, 196 N.Y.S.2d 975 (1959) ........................................................................ 11

Hollander v. Steinberg,
    No. 10-1140-CV, 2011 WL 1252414 (2d Cir. Apr. 5, 2011)....................................18, 19, 20

Ipreo Holdings LLC v. Thomson Reuters Corp.,
    No. 09-CV-8099, 2011 WL 855872 (S.D.N.Y March 15, 2011)........................................ 18

Jartech, Inc. v. Clancy,
    666 F.2d 403 (9th Cir. 1982).......................................................................................... 18

Kane v. Orange Co. Pub.,
    232 A.D.2d 526, 649 N.Y.S.2d 23 (2d Dep't 1996)......................................................... 11

Lancellotti v. Howard,
    155 A.D.2d 588, 547 N.Y.S.2d 654 (2d Dep't 1989)....................................................... 13

McCagg v. Marquis Jet Partners, Inc.,
    No. 05 Civ. 10607, 2007 WL 2454192 (S.D.N.Y. Aug. 29, 2007)............................... 23

Montblanc-Simplo GmbH v. Colibri Corp.,
    692 F. Supp.2d 245 (E.D.N.Y. 2010) ............................................................................ 23

Murray v. New York Univ. College of Dentistry,
    57 F.3d 243 (2d Cir. N.Y. 1995)..................................................................................... 14

New Era Publications Int'l. ApS v. Henry Holt & Co.,
    695 F.Supp. 1493 (S.D.N.Y. 1988), aff'd, 873 F.2d 576 (2d Cir. 1989), cert. denied,
    494 U.S. 1094, 110 S.Ct.2d 1169 (1990)......................................................................... 21

Papelino v. Albany College of Pharmacy of Union University,
    633 F.3d 81 (2d Cir. 2010)............................................................................................. 16

Purdie v. City of New York,
    No. 10 Civ 5802, 2011 WL 1044133 (S.D.N.Y. March 15, 2011) ...................................... 10

Religious Technology Center v. Wollersheim,
    971 F.2d 364 (9th Cir. 1992) .......................................................................................... 18

Roberts v. Keith,
    No. 04 CV 10079, 2009 WL 3572962 (S.D.N.Y. Oct. 23, 2009) ........................................ 23

Shell v. DeVries,
    No. 07-1086, 2007 WL 4269047 (10th Cir. Dec. 6, 2007).................................................. 18

Shelton v. Trustees of Columbia University,
    369 Fed. Appx. 200 (2d Cir. 2010)..........................................................................14, 15, 16

Smith v. Westchester Co.,
    No. 09-CV-5866, 2011 WL 570141 (S.D.N.Y. Feb. 15, 2011) ............................................... 5

## STATUTES, RULES, AND REGULATIONS

17 U.S.C. §107 ...................................................................................................18, 19, 20

20 U.S.C. §1681 ..................................................................................................... 8, 13

Fed. R. Civ. P. 8 ...................................................................................................... 9, 23

Fed. R. Civ. P. 12.................................................................................................. 1, 9, 23

N.Y. Civ. Rights Law §50.................................................................................1, 8, 10, 11, 12

Title VII of the Civil Rights Act of 1964,
    as amended, 42 U.S.C. §2000e et seq. ("Title VII")............................................8, 13, 14, 16

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted in support of Defendant Berkeley College's motion pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiff Robert Scott's ("Scott") Amended Complaint ("Am. Cplt."), for failure to state a claim upon which relief can be granted.  A copy of the Amended Complaint with its Exhibits is attached as Exhibit 1 to the Declaration of David F. Bayne, Esq., dated June 29, 2011 ("Bayne Aff."), submitted herewith.

Pro se Plaintiff Scott's original Complaint alleged one count of copyright infringement against Defendant Berkeley College based on the alleged conduct of one of its students in transmitting a video work entitled "Disgraceful: College Fight in NYC Breaks Out Between A Guy, His Girl and Another Girl in Class (Man Strong Arm's The Student, Hitting Her with Body Shots)" to Defendant WorldStarHipHop, Inc.  After moving to dismiss that pleading for failure to state a claim, Plaintiff amended his complaint and abandoned the theory that his alleged copyright was infringed because a student purportedly transmitted it to the internet.   The Amended Complaint now alleges five claims against Berkeley for alleged violations of the New York Civil Rights Law, gender discrimination and retaliation, negligent infliction of emotional distress and a new claim of copyright violation.

Each of the new claims is deficient as pled, and indeed, each is patently meritless under well establish law.  The New York Civil Rights Law claim is inapplicable because there are no allegations Berkeley College ever used the video for trade purposes.  The gender discrimination claim fails to allege facts establishing that Berkeley College's actions were merely pretextual, and the alleged "retaliatory" expulsion of Plaintiff from Berkeley College occurred *before* the act that purportedly gave rise to the retaliation in the first place.  The negligent infliction of

emotional distress is without merit as there are no allegations of a breach of duty that endangered the Plaintiff's physical safety or caused him to fear for his safety.

Finally, Plaintiff's new copyright claim alleges that Berkeley College's submission of the subject video in defense of a frivolous gender discrimination claim made by Plaintiff to the New York State Division of Human Rights ("NYSDHR") infringed Plaintiff's alleged copyright in the video. Plaintiff was expelled from Berkeley College for intervening in and escalating a fight between his former girlfriend and his current girlfriend in a Berkeley College classroom. Another student in the classroom took a cell phone video of Plaintiff repeatedly punching his former girlfriend in the back of her head and her body at a time when she was unable to defend herself from his blows. Within days of filing his NYSDHR discrimination complaint against Defendant, Plaintiff claims to have purchased the copyright in the cell phone video for $1 and then tried to use his purported copyright to prevent Defendant from using the video to defend itself before the NYSDHR.

This claim should be dismissed because the Second Circuit, as well as other Circuit Courts Appeals, has held that the use of copyrighted material as evidence in a legal proceeding falls within the "fair use" doctrine. Moreover, it is clearly against public policy to allow the Copyright laws to be used to suppress evidence in a case such as this. The Copyright laws are intended to protect intellectual property. They are not meant to allow a plaintiff to purchase a copyright in a video showing his misconduct and then use that copyright to shield evidence of his own wrongdoing from a court or an administrative body.

Therefore, it is respectfully submitted that the Amended Complaint should be dismissed in its entirety.

## STATEMENT OF THE ALLEGATIONS

Plaintiff is an individual and former student of Defendant Berkeley College who claims to be the copyright owner in a work titled: "Disgraceful: College Fight in NYC Breaks Out Between A Guy, His Girl and Another Girl in Class (Man Strong Arm's The Student, Hitting Her with Body Shots)." Am. Cplt. ¶1. Defendant Berkeley College is a New York corporation providing educational services as a private college within the State of New York. Am. Cplt. ¶4. Defendant WorldStarHipHop, Inc. is alleged to be a Nevada Corporation operating and maintaining a commercial website at www.wordstarhiphop.com which allegedly published Plaintiff's copyrighted work. Am. Cplt. ¶¶2-3. The docket in this case does not indicate that WorldStarHipHop, Inc. has been served or has otherwise appeared in this action.

Plaintiff alleges that in October and November 2010, while he was a student at Berkeley College, he sought and received counseling to help him address a "conflict" he was having between his ex-girlfriend and his then current girlfriend, both of whom were also Berkeley College students. Am. Cplt. ¶¶10-13.

Despite receiving counseling, on November 18, 2010, Plaintiff admits being involved in what he calls an "unfortunate altercation," which was captured on a cell phone video taken by another Berkeley College student. Am. Cplt. ¶14 and Ex. F. The video shows Plaintiff intervening in a fight between two female students, his current and former girlfriends, in a Berkeley College classroom. Plaintiff is seen repeatedly punching one of the females in the back of her head and her body before pulling the two women apart and throwing the one he was punching to the floor. Id. Plaintiff himself admits that his behavior was "egregious." Am. Cplt. ¶28. Both he and the two women were immediately "expelled" from Berkeley College until further notice. Am. Cplt. ¶15.

3

The student who took the video allegedly published it by distributing it to a group of other unidentified Berkeley College students via "Blackboard Service, etc., for further distribution ..." to Defendant WorldStarHipHop, Inc.  Am. Cplt. 14 and Ex. F.  Defendant WorldStarHipHop, Inc. allegedly began to publish the video on the following day, November 19, 2010. Am. Cplt. ¶16.

On November 19, 2010, Plaintiff alleges that he received a call from the Dean of Student Development and Campus Life, Ms. Cobo de Paci, advising him that neither he nor the two female students involved in the fight would be permitted back to Defendant's campus until the conclusion of the investigation into the incident.  The Dean further requested that Plaintiff provide a written account of his involvement in the incident, and allegedly added that things did not "look good" for the Plaintiff based on her review of the video of the fight.  Am. Cplt. ¶17.

On November 21, 2010, Plaintiff provided Berkeley College with a written statement concerning the incident in which he admitted intervening in the fight after it had started.  Am. Cplt. Ex. G.  Although Plaintiff alleges his intervention was justified based on things he claims to have learned and observed about his former girlfriend when they were in a relationship (Am. Cplt. ¶19), his written statement contains none of this information and simply claims he was justified in intervening in the fight to "defend and protect" his current girlfriend.  Am. Cplt. ¶20 and Ex. G.

On November 26, 2010, Dean Cobo de Paci sent an e-mail attached as an exhibit to the Amended Complaint entitled "Draft of Student Incident Report" with her recommendation that the female students not be further disciplined because of extenuating circumstances but that Plaintiff's distinct actions and aggravated conduct merited his expulsion.  Am. Cplt. ¶21 and Ex.

H.[1]  Plaintiff further complains that the two female students were invited to meet with Dean Cobo de Paci to discuss the incident, while he was not. Am. Cplt. ¶22.

On November 28 and 29, 2010, Plaintiff sent several e-mails to Dean Cobo de Paci complaining that he was being treated unfairly because of his gender. Am. Cplt. ¶¶23-29 and Exs. I.  On the morning of November 30, 2010 at 8:28 a.m. Plaintiff alleges that he filed "an affirmative action complaint" with Defendant's Campus Operating Officer accusing Dean Cobo de Paci of "unlawful discriminatory practices based on gender...." The complaint is not alleged to have been sent to Dean Cobo de Paci. Am. Cplt. ¶30 and Ex. J.  On November 30, 2010 at 2:04 p.m. Dean Cobo de Paci advised Plaintiff that he was being expelled from Berkeley College. Plaintiff alleges that this was a "retaliatory action against Plaintiff ... for filing said complaint charging her with discriminatory practices based on gender...." Am. Cplt. ¶32.

On or about November 30, 2010 Plaintiff filed a Verified Complaint with the NYSDHR alleging one count of gender discrimination for the allegedly different way in which he was being disciplined from the two female students involved in the matter.  A copy of Plaintiff's Complaint, of which this Court may take judicial notice, is attached as Exhibit 3 to the Bayne Declaration.[2]

_____

[1]   The e-mail attached by Plaintiff is incomplete because it does not include the attached statement from Plaintiff's former girlfriend accusing Plaintiff of instigating the confrontation that occurred on November 18.  A copy of the complete e-mail with the student's statement attached is submitted herewith as Exhibit 2 to the Bayne Declaration.

[2]  Plaintiff attaches Berkeley College's Verified Answer and the NYSDHR's Determination and Order after Investigation in this administrative proceeding to his Amended Complaint.  Am. Cplt. Exs. K and P.  This Court may take judicial notice of the pleadings and decisions in state administrative proceedings such as that initiated by Plaintiff before the New York State Human Rights Division.  Smith v. Westchester Co., No. 09-CV-5866, 2011 WL 570141, at *3, n.27 (S.D.N.Y. Feb. 15, 2011); Bey v. City of New York, No. 99 Civ. 3873, 2010 WL 3910231, at *4 (S.D.N.Y. Sept. 21, 2010); Evans v. New York Botanical Garden, No. 02 Civ. 3591, 2002 WL

On December 3, 2010, Plaintiff alleges that he purchased the exclusive rights in the video of the November 18 fight for one dollar. Am. Cplt. ¶33 and Ex. L. Also on December 3, 2010, Plaintiff received written notice of his expulsion from Berkeley College. Am. Cplt. ¶34.

On December 4, 2010, Plaintiff claims to have registered the copyright for the video of the November 18, 2010 fight under the title: "Disgraceful: College Fight in NYC Breaks Out Between A Guy, His Girl and Another Girl in Class (Man Strong Arm's The Student, Hitting Her with Body Shots)." Am. Cplt. ¶¶35-36.

Also on or about December 4, 2010, Plaintiff contends that he sent "cease and desist" notices to both Defendants advising them that he was the copyright holder in said video. Among other things, Plaintiff demanded that Berkeley College destroy or deliver to him all copies of the video and also pay him $10,000 as a "licensing fee." Am. Cplt. ¶37 and Ex. O. Plaintiff alleges that both Defendants disregarded his cease and desist notice. In particular, Berkeley College did so by allegedly downloading a copy of the video between December 4 and December 16, 2010 from Defendant WorldStarHipHop, Inc.'s website, and thereafter "distributed the work though its blackboard network and the law offices of Kavanagh Maloney & Osnato LLP." Am. Cplt. ¶38.

The only example given of any alleged distribution by Berkeley College or its counsel is that a copy of the video was attached to Berkeley's Verified Answer to Plaintiff Scott's Complaint before the NYSDHR. Am. Cplt. ¶39 and Ex. L. Plaintiff admits that the purpose for which the video was attached to Berkeley's NYSDHR pleading was to "demonstrate that Defendant, Berkeley College ... had a legitimate, nondiscriminatory reason for how it treated the Plaintiff...." Am Cplt. ¶41.

---

31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (court takes judicial notice of pleadings and the determination of the NYSDHR in dismissing claims on a 12(b)(6) motion).

Plaintiff attaches the January 19, 2011 Determination and Order After Investigation of the NYSDHR which finds that Berkeley College "has articulated a legitimate, nondiscriminatory reason for how it treated the complainant which has not been proven to be a pretext to discrimination." Am. Cplt. Ex. P p.3. The NYSDHR repeatedly cites to the video as evidence of the incident in question:

> The respondent submitted a video which displays the complainant [Scott] engaging in a fight which was already in progress. The video also shows the complainant punching a female student in her head from behind. The respondent made a determination from the video that the complainant's actions were unacceptable and expelled him from the school.
>
> * * * * *
>
> The Complainant was captured on video punching his former girlfriend while she had her back to him and posed no physical threat to him.
>
> * * * * *
>
> The video submitted by the respondent showed the complainant hitting his former girlfriend from behind while her back was turned to him.

Am. Cplt. Ex. P p.2.

Ultimately, the NYSDHR concluded that: [a]fter gathering all of the evidence, the respondent [Berkeley College] exercised its discretion and expelled the complainant for his egregious behavior, which he acknowledge." Am. Cplt. Ex. P p.2.

Plaintiff then filed an Article 78 Proceeding in the New York State Supreme Court to, among other things, reverse the determination of the NYSDHR. By Decision dated June 1, 2011, the Supreme Court held that:

> Inasmuch as the record reveals that Berkeley dismissed petitioner [Robert Scott] from its college for legitimate disciplinary reasons and that petitioners' claims of discrimination are unfounded, the DHR's determination was not arbitrary and capricious and must be

7

affirmed.    The record contains ample support for the DHR's determination of no probable cause.

A copy of the June 1, 2011 Unfiled Judgment and Memorandum Decision are attached as Exhibit 4 to the Bayne Declaration.

### PLAINTIFF'S CLAIMS FOR RELIEF

Plaintiff's Amended Complaint alleges five claims for relief. The first is for an alleged violation of his privacy under New York Civil Rights Law Section 50. Am. Cplt. ¶¶42-44.

Plaintiff's Second claim for relief is titled "Negligent Infliction of Emotional Distress" and purports to alleged a claim for tort damages arising from the alleged breach of the Berkeley College Code of Conduct and Communication and Media Relations Policies because the College did not prevent a student from videoing Plaintiff's participation in the November 18 fight. Plaintiff further alleges that the video represents him in a "false light," but does not specify why this is so. Am. Cplt. ¶¶45-50.

Plaintiff's Third claim for relief purports to allege a claim of "sex discrimination" under Title IX of the United States Code, specifically 20 U.S.C. §1681. Plaintiff alleges that he was discriminated against because the female participants in the November 18 fight were allowed to meet with Berkeley College in person while Plaintiff was not and because he was expelled from Berkeley College while the female students were not. Am. Cplt. ¶¶51-53.

The Fourth claim for relief purports to allege a claim of retaliation under Title IX of the United States Code based on the allegation that he was notified of his expulsion from Berkeley College by Dean Cobo de Paci within hours of filing an "affirmative action complaint" with Defendant's Campus Operating Officer complaining of alleged sex discrimination. Am. Cplt. ¶¶54-55.

8

Plaintiff's Fifth and final cause of action is for the alleged violation of his claimed copyright in the video work: "Disgraceful: College Fight in NYC Breaks Out Between A Guy, His Girl and Another Girl in Class (Man Strong Arm's The Student, Hitting Her with Body Shots)" which is alleged against both Defendants. Plaintiff merely incorporates the prior allegations of his pleading and does not provide any further factual allegation or explanation of this claim for relief. Am. Cplt. ¶¶56-57.

## ARGUMENT

It is respectfully submitted that each of Plaintiff's five claims for relief against Defendant Berkeley College should be dismissed for failure to state a claim upon which relief can be granted. A plaintiff's claim should be dismissed pursuant to Rule 12(b)(6) when he fails to satisfy Rule 8(a)(2) of the Federal Rules of Civil Procedure by providing "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Id. at 555 (citations and internal quotation marks omitted, emphasis added).

The Supreme Court has set forth a two-pronged approach to assessing whether a complaint states a claim upon which relief can be granted. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by

9

mere conclusory statements, do not suffice." Id. at 1949.  Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.

> The Court defined plausibility as follows:
>
> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (quoting Twombly, 550 U.S. at 556-57) (emphasis added and internal citations omitted).  In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'- that the pleader is entitled to relief." Id. at 1950.

Although pro se litigants, such as Plaintiff, are allowed great latitude in their pleadings, the Twombly and Iqbal plausibility standard still applies to a pro se complaint.  Purdie v. City of New York, No. 10 Civ. 5802, 2011 WL 1044133, at *2 (S.D.N.Y. March 15, 2011).

## POINT I

### PLAINTIFF IS NOT ENTITLED TO ANY RELIEF AGAINST DEFENDANT BERKELEY COLLEGE UNDER THE NEW YORK CIVIL RIGHTS LAW

Although Plaintiff's First claim for relief repeats and realleges the allegations of paragraphs 10 though 41, the claim itself appears directed solely at WorldStarHipHop, Inc. and makes no direct reference to any alleged conduct of Defendant Berkeley College.  Am. Cplt. ¶¶42-44.  Paragraph 40 of the Amended Complaint, however, appears to allege that Berkeley College violated Plaintiff's rights under the Civil Rights Law.  Am. Cplt. ¶40.  Thus, in the event this claim is directed at Berkeley College, the Amended Complaint fails to state a claim because

Berkeley is not alleged to have done anything with the video for its own commercial purposes or gain.

The Civil Rights Law penalizes the misappropriation of a plaintiff's name for "a defendant's benefit." Farrow v. Allstate Ins. Co., 53 A.D.3d 563, 862 N.Y.S.2d 92 (2d Dep't 2008); accord Cohen v. Herbal Concepts, Inc., 63 N.Y.2d 379, 383, 482 N.Y.S.2d 457 (1984) ("The statute protects against the appropriation of a plaintiff's name or likeness for defendant's benefit."). Civil Rights Law Sections 50 and 51 "were drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more." Arrington v. New York Times Co., 55 N.Y.2d 433, 439, 449 N.Y.S.2d 941, 943 (1982), cert. denied 459 U.S. 1146, 103 S.Ct. 787 (1983); Kane v. Orange Co. Pub., 232 A.D.2d 526, 527, 649 N.Y.S.2d 23, 25 (2d Dep't 1996).

A name "is used 'for advertising purposes' if it appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service." Beverley v. Choices Women's Medical Center, Inc., 78 N.Y.2d 745, 751, 579 N.Y.S.2d 637, 640 (1991). "Trade purposes" is more difficult to define, and involves use which would draw trade to the defendant. Davis v. High Society Magazine, Inc., 90 A.D.2d 374, 379, 457 N.Y.S.2d 308, 313 (2d Dep't 1982); Kane, 232 A.D.2d at 527, 649 N.Y.S.2d at 25; accord Flores v. Mosler Safe Co., 7 N.Y.2d 276, 283, 196 N.Y.S.2d 975, 980 (1959).

In the present case, Plaintiff has not alleged that Berkeley College benefitted in any way by the video or ever sought to use it for commercial or trade purposes. Moreover, it is completely implausible that Berkeley College would have any commercial or trade purpose for

11

the video.  The only affect that the video can have on Berkeley's reputation and image is a detrimental one.  Am. Cplt. Ex. F.

It is respectfully submitted that Plaintiff has not, and cannot, allege a claim under the New York Civil Rights Law against Defendant Berkeley College.

## POINT II

### PLAINTIFF HAS FAILED TO ALLEGE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff contends vaguely that Berkeley College negligently caused emotional distress to Plaintiff.  Specifically, he claims that the Dean Cobo de Paci's failure to enforce Berkeley College's Code of Conduct, Communication and Media Relations Policies against the student who recorded the video of the fight.  Had the "enforcement" taken place, the theory goes, the Plaintiff would not have been "represented in a false light to the public by the Defendant, WorldStarHipHop.

There are several fatal defects with this theory that subject this claim to dismissal.  First, the complaint admits that while the fight occurred November 18, 2010, the video was "published" on the internet the very next day, November 19, 2010.  (Am. Cplt. ¶¶ 15, 16).  Thus, it is not clear that anything Berkeley College could have done would have prevented the release of the video short of running to court to obtain a temporary restraining order, which it had no obligation whatsoever to do.  Second, the claim fails to identify how plaintiff was described "in a false light" as the video captures what actually happened without commentary or editing.

Notwithstanding the foregoing defects, the claim is simply not sufficiently pled under New York law.  In order to plead negligent infliction of emotional distress in New York, the complaint must be premised on a breach of duty "owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his own physical

safety." Colorado Capital Inv. v. Owens, 304 Fed. Appx. 906, 908 (2d Cir. 2008) (citing Lancellotti v. Howard, 155 A.D.2d 588, 547 N.Y.S.2d 654 (2d Dep't 1989)). The limitation in New York that claims must deal with danger of physical safety – such as witnessing an auto accident – is designed to limit this inherently speculative claim to objectively meritorious situations only. In fact, New York courts "have expressed a longstanding reluctance to recognize causes of action for negligent inflict of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury." Colorodo Capital, Fed. Appx. at 908 (citing Broadnax v. Gonzalez, 2 N.Y.3d 148, 777 N.Y.S.2d 416 (2004)).

Here, there is no allegation that Plaintiff feared for his safety or suffered an independent physical or economic injury. The claim instead is Plaintiff's mere embarrassment that his egregious conduct is "out there" in for all to see in cyberspace. As in Colorado Capital, the Plaintiff's "failure to show that [Berkeley College] endangered his physical safety or caused him fear for his physical safety is fatal to his claim" and thus dismissal is appropriate.

### POINT III

### PLAINTIFF HAS FAILED TO ALLEGE A DISCRIMINATION OR RETALIATION CLAIM AGAINST BERKELEY COLLEGE

Plaintiff's asserts claims of "sex discrimination" and "retaliation" under Title IX of the United States Code, specifically 20 U.S.C. §1681. Plaintiff alleges that he was discriminated against because he was denied the opportunity to meet the Dean of Berkeley College in person while the female participants in fight did meet in person, and also because he was expelled from Berkeley College while the female students were not. Am. Cplt. ¶¶51-53. Plaintiff also claims retaliation alleging that he was notified of his expulsion from Berkeley College by Dean Cobo de Paci within hours of filing an "affirmative action complaint" with Defendant's Campus Operating Officer complaining of alleged sex discrimination. Am. Cplt. ¶¶54-55.

13

Initially, the Amended Complaint fails to state a claim for discrimination. Courts in New York have held that the Title VII standard for proving discriminatory treatment should apply to claims of sex discrimination arising under Title IX. Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 249 (2d Cir. N.Y. 1995); This includes the McDonnell-Douglas "burden-shifting" formula where (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the College to articulate a legitimate, nondiscriminatory reason for its actions and it the College does so, the (3) the burden shifts back to the plaintiff to prove that the College's stated reason is merely pretextual and that age or gender discrimination was an actual reason for the adverse action. Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005).

In Shelton v. Trustees of Columbia University, 369 Fed. Appx. 200 (2d Cir. 2010), the Second Circuit upheld the dismissal of discrimination charges arising from a student's expulsion for plagiarism. Applying the McDonnell-Douglas "burden-shifting" formula, the court found that as there no dispute the student committed plagiarism, that plagiarism can result in expulsion, and that the committee voted to expel without the members accused of discrimination and / or retaliation, the student therefore failed to present evidence from which a reasonable jury could find that Columbia's legitimate reason for his expulsion was pretextual. Shelton, 369 Fed. Appx. at 202.

Similarly here, the two alleged "instances" of discriminatory behavior – namely that he was not granted an in-person interview with the Dean while the Dean personally met with the female fight participants, and that Plaintiff was expelled for fighting while the female fight participants were not – occurred for non-discriminatory reasons that were not pretextual. As part of Berkeley College's investigation into what happened in the November 18, 2010 incident, it

14

collected witness statements, participant statements, security reports, and the video of the incident. The Amended Complaint admits that Plaintiff was afforded opportunities by phone and by written submission to explain what had happened, yet he claims that the fact that he could not meet the Dean to describe what happened "in person" was done for discriminatory reasons – his sex. Am. Cplt. ¶17. However, the Amended Complaint also readily admits that by as soon as the day after the altercation, the Dean viewed a copy of the video of the fight itself which clearly showed Plaintiff's admitted "egregious" conduct, obviating the need for any additional meetings with Plaintiff. The video, as the best piece of available evidence to the investigation, clearly established Plaintiff's violent escalation of the fight between the female participants. There is no evidence that the failure to meet Mr. Scott in person was a pretext, and thus according to Shelton this claim should be dismissed.

Secondly, with regard to the punishments, again Berkeley College has a legitimate, non-pretextual reason for expelling Plaintiff but the not the female participants. Simply put, the evidence shows that it was not Plaintiff's sex but his more extreme conduct that resulted in his expulsion. As the Dean observed in her November 26, 2010 email, Berkeley College *distinguished the conduct* in its decision to merely suspend female fight participants due to the fact that each participant felt vulnerable and both felt they were acting in self-defense:

> Both ladies felt they put themselves in a very vulnerable situation due to a controlling man who kept manipulating them. Prior to the 11/18 incident these two ladies never had a fight or words exchanged between them. Both ladies agreed to see a counselor and sit down to discuss the issue with a mediator...Ms. Pattillo, was a victim of self defense after Ms. Hickmon hit her first. The reason Ms. Hickmon hit Ms. Pattillo was because Mr. Scott included Ms. Patillo comments into the conversation and the verbage was offensive. (Am. Cplt. Ex. H)

In contrast, the Dean's recommendation found Mr. Scott's actions had no justification as they were not the result of feeling vulnerable or threatened, and instead identified his actions, as Plaintiff himself admits, as more "egregious" in that he "elevated" the situation when he should have been separating the two ladies:

> Again the situation was elevated by Mr. Scott. Mr. Scott could have prevented the situation from moving forward. Instead of separating the two young ladies, he began beating up Ms. Hickmon and throwing her on the floor. I do not recommend that Mr. Scott return to Berkeley College due to his public disorderly conduct and harassment against Ms. Hickmon. (Am. Cplt. Ex. H).

As in the Shelton case where Columbia University's guidelines provided for expulsion for plagiarism, here Berkeley College's Student Handbook specifically provides for expulsion for disorderly conduct and states as follows: "The College reserves the right to dismiss or suspend students for conduct which impedes, destructs, or interferes with the orderly and continuous administration and operation of the College or any unit of the College." (Bayne Decl. Ex. 5 p.30).

Finally, with regard to the claim for retaliation, the claim is without merit as the retaliatory act – the determination to expel - was made four days prior to the act that Plaintiff alleges caused Berkeley to retaliate from in the first place. A plaintiff claiming retaliation under Title IX must first establish a prima facie case by showing 1) protected activity by the plaintiff, 2) knowledge of the protected activity, 3) adverse school-related action, and 4) a causal connection between the protected activity and the adverse action. Papelino v. Albany College of Pharmacy of Union University, 633 F.3d 81, 91 (2d Cir. 2010). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions, and after the defendant has done so the burden shifts back to the plaintiff to demonstrate that the articulated reasons are pretextual. Id. at 92.

16

Here, Plaintiff's complaint is nonsensical. It alleges that the filing of the affirmative action complaint caused the Berkeley College to retaliate by its decision to expel Plaintiff, yet Plaintiff's own complaint admits that the decision to expel was made *four days before* the filing of the affirmative action complaint. Plaintiff alleges that on November 30, 2010 he filed the affirmative action complaint. Am. Cplt. ¶30. Yet, the Amended Complaint admits that the Dean's determination to expel was made four days earlier as Plaintiff's exhibit H to the Amended Complaint is a copy of the Dean's November 26, 2010 email to Edwin Hughes sent at 5:58 p.m. recommending that the Plaintiff be expelled.

Based upon the admission by Plaintiff's Amended Complaint, he cannot show that the affirmative action complaint caused Berkeley to retaliate by expelling him since that determination was made four days before the complaint was made. As such, this meritless claim should be dismissed.

### POINT IV

### BERKELEY COLLEGE HAS NOT INFRINGED ANY ALLEGED COPYRIGHT POSSESSED BY PLAINTIFF IN THE SUBJECT VIDEO

Plaintiff alleges that between December 4 and 16, 2010, Defendant Berkeley College allegedly infringed on Plaintiff's claimed copyright of the video of the November 18 fight by downloading a copy of it from co-Defendant WorldStarHipHop, Inc. and then distributing it on its "blackboard network" and through the law office of Kavanagh Maloney & Osnato LLP. Am. Cplt. ¶39. Plaintiff's allegation of downloading after he allegedly acquired a copyright in the video is contradicted by his own allegation that Berkeley obtained the video as early as November 19 and reviewed it in its investigation of the incident. Am. Cplt. ¶¶14, 17. Plaintiff also makes no factual allegation to support the allegation of distribution by Defendant at any

17

time with the exception that counsel attached the video to Berkeley College's pleading in the NYSDHR proceeding commenced by Plaintiff.  Am. Cplt. ¶39.

In order to plead a claim for copyright infringement a "complaint must allege: (1) which specific original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) 'by what acts during what time' the defendant infringed the copyright." Ipreo Holdings LLC v. Thomson Reuters Corp., No. 09-CV-8099, 2011 WL 855872, at *5 (S.D.N.Y March 15, 2011) (citation and internal quotation omitted).

**A.      Plaintiff May Not Use His Alleged Copyright To Suppress Evidence Of His Own Wrongdoing And Bar Defendant's Use Of The Video To Defend Itself From Plaintiff's Baseless Claims Of Discrimination**

The only specific act of alleged infringement by Defendant Berkeley College alleged by Plaintiff is the submission of the video at issue to the NYSDHR with Berkeley's Verified Answer in defense of Plaintiff's discrimination complaint brought before that agency which Plaintiff admits Berkeley did to "demonstrate that Defendant, Berkeley College ... had a legitimate, nondiscriminatory reason for how it treated the Plaintiff...." Am Cplt. ¶41.  As such, Plaintiff has admitted that Berkeley's use of the video in a quasi-judicial administrative proceeding was not for a commercial or trade purpose but was used solely for the purpose of defending itself against a claim brought by Plaintiff before an administrative body of the State of New York.  Such use clearly falls within the "fair use" doctrine in 17 U.S.C. §107.  Hollander v. Steinberg, No. 10-1140-CV, 2011 WL 1252414, at **2-4 (2d Cir. Apr. 5, 2011); see also Shell v. DeVries, No. 07-1086, 2007 WL 4269047, at *1 (10th Cir. Dec. 6, 2007); Bond v. Blum, 317 F.3d 385, 395 (4th Cir. 2003); Religious Technology Center v. Wollersheim, 971 F.2d 364, 367 (9th Cir. 1992); Jartech, Inc. v. Clancy, 666 F.2d 403, 407 (9th Cir. 1982).

Moreover, in the context of this case, the Court can only infer from the facts alleged in the Amended Complaint that Plaintiff attempted to acquire a copyright in the video for the purpose of suppressing its use as evidence in a proceeding he commenced against Berkeley College.   The copyright laws were never intended to be used for this purpose, and it is respectfully submitted that public policy prohibits a wrongdoer from shielding primary evidence of his or her culpable conduct by asserting a copyright over such evidence.

In Hollander, the Second Circuit affirmed the District Court holding that the submission of copyrighted essays in a judicial proceeding constituted fair use.  The Court listed the four factors in 17 U.S.C. §107 to be analyzed.  They are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Hollander, 2011 WL 1252414, at *3.

With respect to the first factor, the Second Circuit found that the use of the copyrighted work was for litigation purposes and not commercial use.  The Court, in fact, noted that the legislative history of 17 U.S.C. §107 specifically identified the reproduction of copyrighted works in legislative and judicial proceedings as being one type of permitted fair use.  Id.

In the present case, Plaintiff admits that the submission of the video to the NYSDHR was in connection with Defendants' defense to his claim of discrimination.  Am. Cplt. ¶41.  The NYSDHR repeated citation to the video in its January 19, 2011 Determination and Order After Investigation confirms that its use was both justified and appropriate.  Am. Cplt. Ex. P, pp.2-3.

19

With respect to the second factor, plaintiff in <u>Hollander</u> attempted to argue that this work was still unpublished, which provided it additional protection from fair use. In the present case, Plaintiff Scott admits the subject video had been published by the author before he allegedly acquired a copyright in it. Am. Cplt. ¶¶14, 16.

In both <u>Hollander</u> and in this case, the entire copyrighted work was used. In assessing this factor, the Second Circuit stated that the critical issue is whether the quantity of material submitted was reasonable in relationship to the purpose for which it was used. <u>Hollander</u>, 2011 WL 1252414, at *3. The Second Circuit noted that in the context of litigation, materials are regularly reproduced in full for the court, and therefore the full reproduction of the work in question was reasonable. Similarly, the work in question in this case is brief, only several minutes long, and its reproduction unedited and in full can only be seen as reasonable in the context of the NYSDHR investigation of a claim of discrimination based on events shown in the video. Am. Cplt. Ex. F.

The final factor is the "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. §107. The Second Circuit held that there was nothing before the Court to suggest that the use of the copyrighted material "'usurped the market' for the essays." <u>Hollander</u>, 2011 WL 1252414, at *4. Similarly, the Amended Complaint in this case makes no allegation that the market value, if any, of the video in question has been diminished by its submission to the NYSDHR. Indeed, Plaintiff himself attached a copy of the video as an exhibit to his Amended Complaint in this case. Am. Cplt. Ex. F. Moreover, the fact that Plaintiff is suing in the First and Second claims for relief for alleged damages to his privacy and reputation due to publication of the video demonstrates that Plaintiff has no intention of using the video for commercial gain. As noted by the Fourth Circuit in <u>Bond v. Blum</u>, privacy concerns are not the

20

domain of the copyright laws. 317 F.3d at 395 (citing New Era Publications Int'l. ApS v. Henry

Holt & Co., 695 F.Supp. 1493, 1504-05 (S.D.N.Y. 1988), aff'd, 873 F.2d 576 (2d Cir. 1989),

cert. denied, 494 U.S. 1094, 110 S.Ct.2d 1169 (1990)).

Finally, this case raises an important public policy issue about whether the copyright laws

may be used to shield primary evidence of wrongful conduct in a judicial or administrative

proceeding.   In the present case, Plaintiff first swore out a frivolous claim of gender

discrimination against Berkeley College before the NYSDHR alleging that he was subject to

different discipline than the female participants in the fight solely because he is a man.  He then

allegedly purchased the copyright in the video of the fight, which showed him repeatedly

punching one of the female students when she was defenseless from his blows.  He then sought

to use his copyright to prevent Berkeley College from using the video to justify its decision to

expel him before the NYSDHR, and, having failed to do so, has now sued the College for

copyright infringement for using the video to defend itself from his baseless discrimination

claim.  The fact that Plaintiff demanded the return or destruction of all copies of the video within

days of filing the NYSDHR discrimination complaint (compare Bayne Decl. Ex. 3 and Am. Cplt.

Ex. O), demonstrates that Plaintiff's motive in purchasing the copyright was not to commercially

exploit its contents, but to prevent Defendant from using it to show that it had a legitimate and

non-pretextual reason for expelling Plaintiff from Berkeley College.

Having placed the very conduct shown in the video in issue before the NYSDHR, it is

respectfully submitted that Plaintiff may not use the Copyright laws to suppress evidence of his

conduct before that body, or, in the alternative, punish Berkeley College for using that evidence

to defend itself by suing it for copyright infringement.  Berkeley College's submission of the

video to the NYSDHR was not only permissible under the "fair use" doctrine, but it should also

21

be permissible as a matter of public policy because Congress never intended the Copyright laws to be used to suppress direct evidence in a judicial or administrative proceeding.

Simply put, Berkeley College had an absolute right to use the video to defend itself from what both the NYSDHR and the New York Supreme Court have now held to be an utterly meritless claim of gender discrimination brought by Plaintiff.  Am. Cplt. Ex. P and Bayne Decl. Ex. 4.

**B.      Plaintiff's Vague And Conclusory Claim Of "Distribution" By Berkeley College Fails To State A Claim Of Copyright Violation**

Plaintiff's only other allegation against Berkeley College relevant to his copyright claim is that Defendant allegedly downloaded the video from co-Defendant WorldStarHipHop, Inc. after Plaintiff had registered a copyright in it and then "distributed the work though its blackboard network and the law offices of Kavanagh Maloney & Osnato LLP." Am. Cplt. ¶39. As noted above, Plaintiff admits that Defendant obtained the video as early as November 19 before he claims to have obtained his copyright. Am. Cplt. ¶¶14, 17. No facts are alleged support the claim of downloading or distribution between December 4 and 16, 2010 beyond the submission of the video to the NYSDHR with Berkeley's Verified Answer, which is addressed above.

It is respectfully submitted that Plaintiff's conclusory allegation of copying and distribution is insufficient to state a claim for copyright infringement. In Broughel v. Battery Conservancy, No. 07-CV-7755, 2009 WL 928280, at *4 (S.D.N.Y. Mar. 30, 2009), the Court held that "it is axiomatic that plaintiff's claims cannot rest on inchoate and conclusory accusations of unauthorized copying. Rather, in articulating her cause of action, plaintiff must identify, with specificity, the original works that are the subject of her copyright claim and which acts committed by defendants constitute infringement of her rights."

The Broughel court dismissed a complaint alleging that the defendants had "'reproduced, transmitted and displayed images' of her 'copyrighted artwork on their respective websites without authorization or credit.'"  Id.  With respect to two out of the three defendants, the plaintiff failed to allege any specific factual information to support the allegation of reproduction, transmittal or display.  The Court held that:

> [P]laintiff has alleged nothing with respect to specific acts of copyright infringement other than the attached images printed from the Conservancy's website.  Since plaintiff fails to allege any specific infringing acts committed by defendants other than the Conservancy, plaintiff has not complied with the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.  Her claims against defendants other than the Conservancy must be dismissed on that basis alone.

Id. (emphasis added); accord, Montblanc-Simplo GmbH v. Colibri Corp., 692 F. Supp.2d 245, 257 n.6 (E.D.N.Y. 2010); Roberts v. Keith, No. 04 CV 10079, 2009 WL 3572962, at *5 (S.D.N.Y. Oct. 23, 2009).

Plaintiff's naked allegation of general copying and distribution of the video is implausible under the Twombly standard.  As discussed above, the video has no commercial, trade or other value to Defendant, and Rule 12(b)(6) does not require this Court to abandon common sense.  McCagg v. Marquis Jet Partners, Inc., No. 05 Civ. 10607, 2007 WL 2454192, *6 (S.D.N.Y. Aug. 29, 2007).  Since Plaintiff in this case alleges no specific act of alleged infringement against Berkeley College other than its use of the video to defend itself against Plaintiff's claims of discrimination before the NYSDHR, it is respectfully submitted that Plaintiff's copyright claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant Berkeley College respectfully requests that the

Amended Complaint be dismissed in its entirety.

Dated June 29, 2011

Respectfully submitted,

KAVANAGH MALONEY & OSNATO LLP

By _____
    David F. Bayne
Attorneys for Defendant Berkeley College
415 Madison Avenue
New York, NY 10017
212-207-4800

WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER, LLP

By _____
    Joseph L. Francoeur, Esq.
Attorneys for Defendant Berkeley College
150 East 42nd Street
New York, NY 10017-5639
212-490-3000

24