UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X

ROBERT SCOTT,

                                              Plaintiff,                    Docket No. 10-CV-
                                                                                9538
                    -against-


WORLDSTARHIPHOP INC and
BERKELEY COLLEGE,

                                              Defendants.
--------------------------------------------------------------------------X


# Reply Memorandum of Law in Support of
# Motion to Dismiss

# Preliminary Statement

Plaintiff's opposition to the motion to dismiss contains certain key admissions. First and foremost, he concedes that Berkeley had a "legitimate disciplinary reason to dismiss the Plaintiff" from Berkeley, thereby conceding his earlier argument that his dismissal was solely based upon his gender. Instead, he argues in sum and substance that Berkeley somehow failed him by not following procedure in denying him an in-person meeting with the Dean. However, as noted in the moving memorandum, Plaintiff was afforded the opportunity to submit a written explanation and participated in a telephone conference with the Dean. Plaintiff has no specific right to an "in-person" meeting and this claim, vaguely set forth in the opposition, does not support a claim of discrimination.

The second concession relates to the claim of retaliation. Plaintiff concedes that he was "unaware" that the dean's recommendation was made before his filing of the affirmative action complaint, thus this argument is now moot. Nevertheless, plaintiff has engaged in a never-ending assault of vexatious litigation on Berkeley stemming from his refusal to accept responsibility for his own actions. Berkeley respectfully submits that it is time for this to end.

On the claim for negligent infliction of emotional distress, plaintiff misinterprets the cases requiring plaintiff be in actual danger as a prerequisite for bringing this claim and argues that he is in general fear because people saw the video and his address was on the *Worldstarhiphop* website. This does not meet the standard of actual danger, and further, Berkeley cannot be held responsible for what is on a website that it does not control.

With regard to the copyright claim, plaintiff admits Berkeley has the right to use the video to defend itself. It is clear that Berkeley's use of the video constituted "fair use" under 17

2

U.S.C.§107 and plaintiff has failed to allege any reason that Berkeley's use of the video was for anything but investigating the November 18, 2010 incident and defending itself. As such, plaintiff's copyright infringement claim should be dismissed.

In sum, Berkeley College respectfully requests that plaintiff's Amended Complaint be dismissed in its entirety and that leave to replead not be granted. Plaintiff continually shifts his theories and arguments in response to each argument advanced by defendant. He has now served two pleadings and yet under no version of the facts as pled by him has plaintiff been able state a claim upon which relief can be granted. Plaintiff has, however, used this action and the several other judicial and administrative proceedings he has commenced against Berkeley College as a way to punish the school for what he now admits was his justifiable expulsion from the College for his "egregious" conduct. (Pltf's Reply, ¶15 and Amended Complaint ¶28). It is, therefore, respectfully submitted that it is time for Mr. Scott to stop using his *pro se* status to harass Berkeley College with endless meritless complaints.

# ARGUMENT

# POINT I

## Plaintiff Concedes the Discrimination and Retaliation Claims Fails to State Claims

Plaintiff's opposition openly concedes that Berkeley had "a legitimate disciplinary reason to dismiss the Plaintiff from the Defendant, Berkeley College, for his role within the November 18, 2010, incident." Additionally, Plaintiff concedes that Berkeley College's disciplinary decision against him was made "prior to Plaintiff filing a retaliation complaint, [which] Plaintiff was unaware." (*See* Pltf's Reply, ¶ 15, 21). The net effects of these admissions are that plaintiff concedes that his dismissal was not based upon his gender, and also that the decision to expel

3

him was not made in retaliation for his filing an affirmative action complaint. As such, plaintiff's claims of "sex discrimination" and "retaliation" under Title IX of the United States Code, specifically 20 U.S.C. 1681, should be dismissed.

Plaintiff's opposition vaguely argues that Berkeley breached its "student-private contractual relationship" by alleging depriving the Plaintiff "of procedural safeguards that was fair and reasonable for his role within the November 18 incident," and subjecting the Plaintiff to "separate or different rules of behavior, sanctions, or other treatment." (*See* Pltf's Reply, ¶ 16). While not specified in his opposition, he is apparently referring to the lack of an "in-person" meeting. As discussed in more detail in the opening brief and not repeated here, Plaintiff admitted in the Amended Complaint that he was given the opportunity to submit a written statement and had a phone conference with the Dean prior to the decision to expel him. (*See* Amended Complaint ¶ 17, 18, 20). Plaintiff's argument simply does not make sense – if he was provided opportunities to speak with the Dean by phone and to submit a written statement to explain the altercation captured on videotape, and he freely admits that his conduct was sufficient to expel him, what then did he hope to accomplish with an in-person meeting? Plaintiff's complaint can be paired down to not being given the opportunity for an "in-person" meeting to repeat the explanation he had already offered, which in and of itself is not actionable.

While the punishment against the Plaintiff was different than the other participants, the evidence shows that it was not Plaintiff's sex but his more extreme conduct that resulted in his expulsion. Thus, plaintiff was not deprived of reasonable safeguards or subjected to different rules based on gender.

The standard for proving discriminatory treatment in sex discrimination claims arising under Title IX is the *McDonnell-Douglas* "burden-shifting" formula where (1) a plaintiff must

4

first establish a *prima facie* case of discrimination; (2) the burden then shifts to the College to articulate a legitimate, nondiscriminatory reason for its actions and it the College does so, the (3) the burden shifts back to the plaintiff to prove that the College's stated reason is merely pretextual and that age or gender discrimination was an actual reason for the adverse action. *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005). Here, Berkeley has not only demonstrated a legitimate non-discriminatory reason for its actions, but Plaintiff acknowledged in his opposition that the college had "legitimate disciplinary reason" to expel him, and thus Plaintiff has not demonstrated that such reasons were pretextual. (*See* Pltf's Reply, ¶ 15). Following the decision in *Shelton v. Trustees of Columbia*, 369 Fed. Appx. 200, 202 (2nd Cir. 2010), which upheld the dismissal of discrimination charges when the Plaintiff failed to demonstrate that the University's reason for dismissal was not pretextual, as Plaintiff here has conceded the College "legitimate reason," this cause of action should be dismissed.[1]

With regard to the retaliation claim, Plaintiff's concession that Berkeley College's disciplinary decision against him was made "prior to Plaintiff filing a retaliation complaint, [which] Plaintiff was unaware," completely undermines the claim mandating its dismissal.

As noted in *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 91 (2nd Cir. 2010), a plaintiff claiming retaliation under Title IX must first establish a prima facie case by showing 1) protected activity by the plaintiff, 2) knowledge of the protected activity, 3) adverse school-related action, and 4) a causal connection between the protected activity and the adverse action. Then, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id.* Here, the plaintiff has conceded that the adverse

---

[1] Plaintiff's understanding of subject matter jurisdiction is misplaced, as the court here, per plaintiff's complaint, has been asked to review alleged discriminatory conduct pursuant to 20 U.S.C. 1681, and has not been asked by any party to stand as an appeals court of the New York State Supreme court's decision. Any argument that the New York State Supreme Court lacked subject matter jurisdiction in its determination is not properly before this court.

school-related action of expelling him was not causally connected to his filing of the affirmative

action complaint, since he concedes that Berkeley's decision to expel him was made four days

*prior* to the filing of the affirmative action complaint, and as such cannot make a *prima facie*

case. (*See* Pltf's Reply, ¶ 21). Even if it was determined that plaintiff established a *prima facie*

case, the plaintiff has also conceded that Berkeley had articulated a legitimate, non-

discriminatory reason for his dismissal. (*See* Pltf's Reply, ¶ 15). As the claim for retaliation is

without merit, it should be dismissed.[2]

---

[2] In light of plaintiff's open admission that his dismissal was proper and his concession on the retaliation claim, we note that it is within the court's power to *sua sponte* enjoin plaintiff from continuing his vexatious litigation against Berkeley. *Fowler v. Conforti*, 198 A.D.2d 394 (1st Dep't 1993), involved a long series of cases arising from an underlying matter, finally ending with the plaintiff suing the attorney for the underlying defendant. The court held that there was no cause of action, awarded sanctions against the plaintiff in the amount of $10,000, and enjoined him from further litigating against the defendants. Similarly, in the case of *Martin-Trigona v. Capital Cities*, 145 Misc.2d 405 (Sup. Ct., N.Y. County, 1989), the court held that plaintiff's pattern of commencing lawsuits without any legitimate basis as a means of harassing his adversaries warranted the imposition of an injunction against his bringing any further lawsuits unless represented by a duly admitted attorney. See also *Melnitzky v. Apple Bank*. 797 N.Y.S.2d 470 (1st Dep't 2005), where the court enjoined plaintiff from further vexatious litigation *sua sponte*. To date, plaintiff has brought the following proceedings against Berkeley:

1) Internal Grievance with Berkeley of Denial of Equal Access
2) Internal Grievance with Berkeley of Expulsion, which included the following subparts
    a. review and determination by the Dean of Student Development and Campus life,
    b. an opportunity to appeal the determination to the Campus Operating Officer, and
    c. a final opportunity to seek further review by a Grievance Committee.
3) New York State Division of Human Rights Complaint
    a. Initial November 30, 2010 Complaint
    b. Plaintiff's attempt to re-open the NYSDHR proceeding in January 2011
4) US Department of Education Complaint
    a. December 1, 2010 alleging that the College expelled him in retaliation for filing a sex discrimination complaint
    b. Plaintiff refilled his complaint in July 2011
5) Federal Action before the USDC SDNY
    a. Initial copyright action in December 2010
    b. Amended on May 9, 2011 to include allegations of discrimination in education, negligent infliction of emotional distress, misappropriation of plaintiff's name, and an entirely different copyright infringement claim than that alleged in the original Complaint.
6) Article 78 Proceeding challenging the determination of NYSDHR (*see* Bayne Dec. Ex. 4.)

# POINT II

## Additional Allegations in Plaintiff's Reply Does not Revive his Complaint's Failure to Allege a Claim for Negligent Infliction of Emotional Distress

Plaintiff's opposition contains new allegations that Berkeley College negligently caused emotional distress to Plaintiff, but these new allegations are not pled in the complaint and in any event remain insufficient. Plaintiff changes his argument from being "represented in a false light" to the public by Worldstarhiphop, and now claims Berkeley's alleged failure to enforce its Code of Conduct against the student who posted the video on Blackboard caused emotional distress in that comments on Worldstarhiphop's website disclosed plaintiff's name and address and somehow puts Plaintiff's physical safety in danger[3].

Even accepting the new allegations as true, plaintiff fails to allege how Berkeley put the Plaintiff's physical safety in danger. Plaintiff does not allege that Berkeley sent the video to Worldstarhiphop. Berkeley is not responsible for viewer comments that disclosed his name and address, and plaintiff has not alleged how the comments on Worldstarhiphop's website disclosing his name and address put his safety into danger. New York courts are reluctant to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff "suffered no independent physical or economic injury." *Colorado Capital Inv. v. Owens,* 304 Fed. Appx. 906, 908 (2nd Cir. 2008). As plaintiff here has failed to demonstrate a physical or economic injury, plaintiff's cause of action should be dismissed.

---

[3] Plaintiff also argues that Berkeley's alleged failure to enforce its own code of conduct in disciplining Omar Seymour, the student who captured the November 18, 2010 incident, is evidence of a violation of the plaintiff's rights. However, plaintiff has not demonstrated that the alleged failure to discipline Mr. Seymour evidences that Berkeley discriminated against him or caused the alleged negative infliction of emotional distress. Any alleged "student-private contractual relationship" between Berkeley and the plaintiff would not breached by Berkeley's alleged lack of discipline of Mr. Seymour. The plaintiff does not have any standing to seek the enforcement of the alleged "student-private contractual relationship" between Berkeley and Mr. Seymour.

4712680v.1

## POINT III

## Plaintiff Does Not Refute That He Is Not Entitled To Relief Under New York Civil Rights Law

Plaintiff's opposition to Defendant's Motion to Dismiss does not challenge Berkeley's position that he is not entitled to any relief from Berkeley under New York Civil Rights law, for Plaintiff has not alleged that Berkeley has done anything with the video for its own commercial purposes or gain. As the Civil Rights Law penalizes the misappropriation of a plaintiff's name for "a defendant's benefit," and no such benefit has been alleged, plaintiff's cause of action should be dismissed.

## POINT IV

## Scott Has Failed To Allege A Copyright Infringement Claim Against Berkeley College

Plaintiff's defense of his copyright claim is completely jumbled and confused. On the one hand, he concedes that he cannot use his purported copyright to prevent Berkeley College from using the subject video to defend itself from his NYSDHR Complaint. (Pltf's Reply ¶29: "Plaintiff has never tried to suppress [Berkeley College's] access to the video by means of a copyright to defend itself before an administrative agency" (i.e., the NYSDHR)). On the other hand, he argues that he cannot be deprived of his "exclusive rights" in the video by virtue of the fact that he is the subject of the video. (Pltf's Reply ¶33). Nowhere does he articulate how Berkeley has allegedly deprived him of his "exclusive rights" in the video other than by using it to defend itself from what he now admits was his frivolous complaint of gender discrimination before the NYSDHR. (Pltf's Reply ¶15, Amended Complaint ¶¶38-41, 56-57).

4712680v.1

To the extent that plaintiff continues to maintain that Berkeley College's submission of the video as an exhibit to its Verified Answer in the NYSDHR discrimination proceeding violated his purported copyright in the video, plaintiff offers no response to defendants' analysis demonstrating that the submission of the video constituted "fair use" under 17 U.S.C. §107. (Berkeley Moving Mem. pp.18-21). Plaintiff also makes no effort to address the policy issue raised by defendant that the copyright laws are simply not intended to be used to shield direct evidence of wrongful conduct in a judicial or administrative proceeding. (Berkeley Moving Mem. pp.21-22). In short, plaintiff offers no substantive rebuttal to defendants' argument that Berkeley College's submission of the subject video to the NYSDHR was entirely appropriate and in conformance with the copyright and all other laws.

So what then is left of plaintiff's claim? All plaintiff argues in his opposing papers is that:

> On or about December 4, 2010, to on or about December 16, 2010, the Defendant Berkeley College, Code of Conduct, acting through its employee Ms. Anamaria Cobo de Paci, Dean of Student Development and Campus Life, act of downloading, copying and sharing said video thru its blackboard network after adequate notice from the Plaintiff, constituted a clear violation of 17 U.S.C. §101 et seq.

Pltf's Reply ¶28.

To the extent that this allegation is even comprehensible, plaintiff simply strings together phrases attempting to make out the elements of a copyright infringement claim but without alleging any specific facts to support that claim and avoiding any reference to the video's submission to the NYSDHR.

Nowhere does plaintiff claim any specific act of downloading, copying or sharing of the subject video by defendant Berkeley College other than in connection with the defendant's investigation of the November 18 incident and the submission of the video to the NYSDHR as an

9

exhibit to Berkeley College's Verified Answer on December 14, 2010. (Amended Complaint. ¶¶14, 17, 37-39, 41, Ex. K and Ex. O). With respect to the events of November 18 and 19 alleged in the Amended Complaint (¶¶14, 17), which was before plaintiff claims to have acquired his alleged copyright by purchasing the rights for $1 from the student who first recorded and posted the video, plaintiff concedes that he is not asserting any claim for Berkeley's downloading, review and use of the video. (Pltf's Reply ¶28). Thus, what allegedly occurred in November is irrelevant.

As to the alleged events occurring on or after December 4, 2010, the only allegations of downloading, copying, and/or sharing of the subject video among Berkeley College and its counsel relate to the video's submission in the NYSDHR proceeding. Amended Complaint ¶¶33, 38-41 and Bayne Decl. Ex. 3. Clearly, if submission of the video itself to the NYSDHR is "fair use," or is not within the scope of the copyright laws at all, then any alleged downloading, copying and sharing necessary to make that submission to the NYSDHR cannot be actionable either.

To the extent that plaintiff is alleging downloading, sharing and copying for some other purpose, then plaintiff has not articulated any non-protected purpose or reason whatsoever for Berkeley College doing so. Such inchoate and non-specific allegations of unauthorized copying and distribution are simply inadequate to state a claim. *Broughel v. Battery Conservancy*, No. 07-CV-7755, 2009 WL 928280, at *4 (S.D.N.Y. Mar. 30, 2009).

Moreover, any such general allegations of non-protected downloading, copying and sharing are implausible under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009). First, plaintiff's allegation of downloading the video on or after December 4, 2010 is contradicted by his own admission that the video was

10

already in the College's possession as of November 18, before he claims to have acquired any copyright to it.    Amended Complaint ¶¶14, 17, 33.    Plaintiff specifically alleges that on November 18, 2010 the student who took the video provided it to Berkeley College via the Blackboard network (Amended Complaint ¶14) and that on November 19, 2010 plaintiff was advised by the Berkeley College Dean of Student Development that *"because of the video that has been produced*, it doesn't look good on my part."    Amended Complaint ¶17 (emphasis added).    Again, plaintiff concedes he is not asserting any claim for what allegedly occurred prior to December 4, 2010 (Pltf's Reply ¶28), and plaintiff offers no reason why Berkeley would download a video on or after December 4, 2010 which it already possessed.

Second, it is not plausible that Berkeley College would ever copy or share that video on its computer network at any time for any purpose other than to review (and later, defend) the discipline administered to plaintiff.    As the Court can see from reviewing the video (Amended Complaint Ex. O), it shows Berkeley College and its student body in an extremely negative light. This Court is not required to abandon its common sense on a motion to dismiss, *McCagg v. Marquis Jet Partners, Inc.*, No. 05 Civ. 10607, 2007 WL 2454192, *6 (S.D.N.Y. Aug. 29, 2007), and common sense dictates that the video can only be seen as being harmful to defendant's reputation and standing in the community as an academic institution    Simply put, it is not plausible that Berkeley College would have any reason to share this video with its student body or with the public, and plaintiff has not alleged any facts to suggest otherwise.[4]

It is, therefore, respectfully submitted that plaintiff has failed to state a claim for copyright infringement upon which relief can be granted.    Having failed twice to allege a viable

---

[4]   Nor does plaintiff allege any facts that would support any inference that he would have any knowledge of whether the video was on Berkeley College's computer network on or after December 4, 2010 or what was being done with it.   Scott admits that he was banned from Berkeley College immediately following the November 18 incident and that he was notified of his expulsion on November 30, 2010.   (Am. Cplt. ¶¶17 and 32).   He does not allege to have had access to, or knowledge of, the College's computer network as of December 4, 2010 or thereafter.

11

copyright claim against defendant, Berkeley College respectfully submits that leave to re-plead should not be granted.

## Conclusion

**WHEREFORE**, Berkeley respectfully seeks an order of this Court, pursuant to Federal Rules of Civil Procedure 12(b)(6) granting defendant Berkeley's motion dismissing plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted and that no leave to replead be granted.

| KAVANAGH, MALONEY & OSNATO LLP | WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP |
|---|---|
| By: _David F. Bayne_ (signature)<br>David F. Bayne<br>Attorneys for Defendant Berkeley<br>415 Madison Avenue<br>New York, New York 10017<br>(212) 207-4800 | By: _Joseph L. Francoeur_ (signature)<br>Joseph L. Francoeur<br>Attorneys for Defendant Berkeley<br>150 East 42nd Street<br>New York, New York 10017<br>(212) 490-3000 |

12

4712680v.1