UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT SCOTT,

                Plaintiff,                10 Civ. 9538 (PKC)(RLE)

    -against-

                                                    MEMORANDUM
                                                   AND ORDER
WORLDSTARHIPHOP, INC.;
BERKELEY COLLEGE,
                Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Robert Scott, proceeding *pro se*, brings this action against defendants WorldStarHipHop, Inc., ("WorldStar") and Berkeley College ("Berkeley"). Defendant Berkeley moves to dismiss the claims asserted against it for failure to state a claim upon which relief may be granted. Reading plaintiff's Amended Complaint generously, it asserts the following three federal claims against Berkeley: gender discrimination in an education program, pursuant to 20 U.S.C. § 1681; retaliation for filing a complaint alleging gender discrimination, pursuant to 20 U.S.C. § 1681; and copyright infringement, pursuant to 17 U.S.C. § 501. The Amended Complaint also asserts state law claims against Berkeley for invasion of privacy and negligent infliction of emotional distress. For the reasons set forth below, Berkeley's motion is granted as to the federal claims, and this Court declines to exercise supplemental jurisdiction over the state law claims.

## THE AMENDED COMPLAINT

        Plaintiff's Amended Complaint arises from a classroom brawl. On November 18, 2010, plaintiff was involved in an "altercation" with his ex-girlfriend, Lakesha Hickmon, and his then-current girlfriend, Danielle Pattillo, during a class at Berkeley. (Am. Compl. ¶ 14.)

The altercation began as an assault by Ms. Hickmon on Ms. Pattillo, in which plaintiff intervened to "break [it] up" in order to "defend and protect" Ms. Pattillo from Ms. Hickmon's attack. (Am. Compl. ¶ 20.) Another student in the class, Mr. Omar Seymour, video-recorded part of the altercation on his mobile phone. (Am. Compl. ¶ 14.) The video, which is annexed to the Amended Complaint and properly considered on this motion, shows plaintiff, Ms. Hickmon and Ms. Pattillo fighting at the back of a classroom. (Am. Compl. Ex. F.) The two females grapple with each other, falling to the ground and then ending up against a wall in what may be described as a fighter's embrace. (Id.) During this, plaintiff punches one of the females about five times. (Id.)

On the day of the fight, Berkeley "expelled pro tempore until further notice" all three participants in the fight. (Am. Compl. ¶ 16.) On the same day, Mr. Seymour posted the video on a platform for distribution to other students known as "Blackboard." (Am. Compl. ¶ 14) In the words of the Amended Complaint, Mr. Seymour "published [the fight video] pursuant to 17 U.S.C. § 101 by distributing copies of the work to a group of the defendant, Berkeley, Jane Doe and John Doe students via Blackboard Services, etc., for further distribution to the Defendant, WorldStar HipHop, Inc." (Id.) The next day, the video appeared on a website owned and operated by defendant WorldStar, "worldstarhiphop.com." (Am. Compl. ¶¶ 3, 14.) That day, plaintiff received a phone call from the Dean of Student Development and Campus Life, Anamaria Cobo De Paci. (Am. Compl. ¶ 17.) Dean Cobo De Paci told plaintiff that "because of the video that has been produced, it doesn't look good on my [sic] part" and that none of the participants would be allowed back into Berkeley until the end of the investigation into the fight. (Id.) Dean Cobo De Paci asked plaintiff to send her a written report about the incident. (Id.) Plaintiff submitted a written report on November 20, explaining that he reasonably believed it

2

was necessary to "protect [his] girlfriend Ms. Pattillo from the physical assault by Ms. Hickmon as the crowd jeered and encouraged such violence." (Am. Compl. Ex. G.)

Around the same time, Dean Cobo De Paci met in person with Ms. Hickmon and Ms. Pattillo and interviewed four witnesses to the altercation. (Am. Compl. Ex. H.) Based on these conversations, Dean Cobo De Paci concluded that Ms. Pattillo was "a victim of self defense after Ms. Hickmon hit her first;" that Ms. Hickmon hit Ms. Pattillo because "Mr. Scott included Ms. Patillo [sic] comments into the conversation and the verbage [sic] was offensive;" and that "the situation was elevated by Mr. Scott," who could have prevented it from moving forward, but who instead "began beating up Ms. Hickmon and throwing her on the floor." (Id.) Therefore, she "[did] not recommend that Mr. Scott return to Berkeley due to his public disorderly conduct and harassment against Ms. Hickmon." (Id.) However, she "strongly recommend[ed] that both women return to campus on Monday 11/29" and that they be provided with a counselor and a mediator. (Id.)

At this point, plaintiff began to complain that he was being treated differently from the women involved in the altercation based on his gender. In a series of emails to Dean Cobo De Paci beginning on November 28, he complained that Ms. Hickmon and Ms. Pattillo were allowed to return to school while he was not; he requested an explanation and made attempts to set a meeting time with the Dean. (Am. Compl. ¶¶ 23-29 and Ex. I.) Dean Cobo De Paci offered as explanation that "each individual involved in the incident is treated as a separate case," and suggested a meeting time on November 30. (Id.) Apparently no meeting took place on November 30; instead, on that day, plaintiff filed an "affirmative action complaint" with Berkeley against Dean Cobo De Paci. (Am. Compl. ¶ 30 and Ex. J.) That afternoon, Dean Cobo De Paci telephoned plaintiff and told him that he was expelled. (Am. Compl. ¶ 32.)

Later the same day, plaintiff filed a verified complaint with New York State Division of Human Rights ("NYSDHR") alleging sex discrimination by Berkeley. (Am. Compl. Ex. P.) On January 19, 2011, the NYSDHR dismissed the complaint, concluding: "[a]fter gathering all the evidence, [Berkeley] exercised its discretion and expelled the complainant for his egregious behavior, which he acknowledged." (Id.)

Separately, plaintiff purchased all rights in the fight video from Mr. Seymour and registered his copyright with the United States Copyright Office. (Am. Compl. ¶ 35 and Exs. A, L.) Thereafter, plaintiff sent letters to both Berkeley and WorldStar demanding, among other things, that they cease and desist from any infringing uses of the fight video. (Am. Compl. Exs. M, O.) However, WorldStar continued to make the video available on its website. (Am. Compl. ¶ 38). The Amended Complaint also alleges that Berkeley, "acting through its counsel Mr. David. F. Bayne . . . . downloaded a copy [from the WorldStar website] . . . and distributed the work through its blackboard network and the law offices of Kavanah Maloney & Osnato LLP." (Am. Compl. ¶ 39.) Similarly, on December 14, Berkeley downloaded a copy of the fight video and attached it to Berkeley's verified answer to plaintiff's NYSDHR complaint. (Am. Compl. ¶ 41.)

Subsequently, plaintiff commenced this action, and thereafter Berkeley moved to dismiss the original complaint on April 18, 2011 (Docket # 15), after first providing the plaintiff and the Court with a pre-motion letter outlining the basis of the motion (Docket # 14). In apparent reliance on Fed. R. Civ. P. 15(a)(1)(B), plaintiff filed an Amended Complaint on May 24, 2011. (Docket # 26.)[1] Berkeley outlined the proposed basis for the motion addressed to the Amended Complaint in a letter to the Court, and the Court set a schedule on the motion. (Docket

---

[1] A second motion to dismiss the Amended Complaint appearing on the docket (docket # 37) is a duplicate of this motion.

# 28.) Berkeley has served plaintiff with the notice required by Rule 12.1 of the Local Civil Rules. (Docket # 33).

## DISCUSSION

I. Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Aschcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In assessing a compliant, courts draws all reasonable inferences in favor of the plaintiffs. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). And, in the case of *pro se* plaintiffs, courts give a liberal and generous construction to the pleadings, interpreting them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

The Supreme Court has cautioned against the imposition of heightened pleading standards in specific areas of law, particularly in discrimination claims. See Swierkiewicz v. Sorema N.A., 534 US. 506 (2002) (holding that imposing a "heightened pleading standard in employment discrimination cases conflicts with" the Federal Rules); see also Fed. R. Civ. P. (8)(a)(2) (2011) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief.")  The Court's more recent cases interpreting Rule 12(b)(6) have agreed with Swierkiewicz that a heightened pleading standard is impermissible in discrimination cases—or anywhere else. See Twombly, 550 U.S. at 569-70 (citing Swierkiewicz for proposition that "a heightened pleading requirement," requiring the pleading of "specific facts beyond those necessary to state [a] claim and the grounds showing entitlement to relief," is "impermissibl[e],"); Iqbal, 129 S.Ct at 1953 (holding that Twombly announced the standard for

all civil actions); see also Arista Records LLC v. Doe, 604 F.3d 110, 119-121 (2d Cir. 2010) (finding Swierkiewicz, Twombly, and Iqbal in agreement).

However, while the Court has reaffirmed that there are no heightened pleading standards, it has also emphasized that every complaint must state a claim for relief that is "plausible" not just "conceivable." Twombly, 550 U.S. at 570. That is to say, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557) (internal quotations omitted). Because the mere "possibility" of misconduct is not enough, facts that show parallel action but not an agreement to conspire are insufficient to state an antitrust violation, Twombly, 550 U.S. at 566, and facts that show detention of religious and racial minorities but not any discriminatory intent are insufficient to state a violation of the First or Fifth Amendments, Iqbal, 129 S.Ct at 1952. As the foregoing suggests, the focus of the inquiry is on the factual allegations in a complaint, not on a complaint's legal conclusions. Legal conclusions are not entitled to any assumption of truth. Id. at 1950. A court should examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. If not, the complaint should be dismissed.

In assessing the complaint, a court may "consider documents incorporated by reference or attached to the complaint as exhibits, documents the plaintiff knew of or possessed and relied upon in framing the complaint, and items of which judicial notice maybe taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). Here, plaintiff has annexed relevant documents and emails and a video of a key portion of the central event in the case—the fight in the classroom. These materials are properly considered on the motion.

II.     Plaintiff Fails to State a Claim for Gender Discrimination.

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88, provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal funds." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied private right action, Cannon v. Univ. of Chi., 441 U.S. 667 (1979), for monetary damages as well as injunctive relief, Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60 (1992).

In Yusuf v. Vassar Coll., the Second Circuit recognized two categories of claims of gender bias in university discipline: claims of an erroneous outcome from a flawed proceeding and claims of selective enforcement. 35 F.3d 709, 714-16 (2d. Cir. 1994). In the former case, a party asserts that he or she was innocent and wrongly found to have committed the offense; in the latter case, a party asserts that, regardless of guilt, the severity of the penalty was affected by the student's gender. Id. Read generously, plaintiff's complaint alleges both types of discriminatory discipline recognized in Yusuf. Plaintiff's statement that his "egregious behavior . . . did not provide the Defendant . . . with a rational basis to subject the plaintiff . . . to different rules of behavior, sanctions and treatment" (Am. Compl. ¶ 28), could fairly mean either that Berkeley erroneously declared him guilty of worse misconduct than the women involved in the fight (flawed outcome), or that Berkeley unfairly subjected him to uniquely severe discipline for the same offense as the women in the fight (selective enforcement).

However, while a plaintiff may plead that he or she is in both categories, "in neither case do wholly conclusory allegations suffice for the purposes of Rule 12(b)(6)." Yusuf, 35 F.3d at 715. Therefore, when a plaintiff claims a flawed outcome, a plaintiff must allege

7

"particular facts sufficient to cast some articulable doubt on the accuracy of the outcome" and "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."  Id.  Likewise, when a plaintiff claims selective enforcement, a plaintiff must allege particular circumstances suggesting meaningful inconsistency in punishment, see id. at 716 (affirming dismissal of plaintiff's selective enforcement claim when facts could not show inconsistent punishment of similarly situated students), and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency, id. at 715 (wholly conclusory allegations insufficient).  For the reasons stated below, plaintiff fails to allege facts sufficient to meet either standard.

        a.      The Flawed-Outcome Claim

To state a flawed-outcome claim, plaintiff must allege facts casting "articulable doubt" on the accuracy of the proceeding and circumstances suggesting "gender bias was a motivating factor behind the erroneous finding."  Id.  Yousef notes that the burden of pleading a procedural flaw affecting outcome is not heavy but it also cautions that:

> "[A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss. The fatal gap is, again, the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias. A plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. Allegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases . . . . Such allegations might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender. Of course, some allegations, such as statements reflecting bias by members of the tribunal, may suffice both to cast doubt on the accuracy of the disciplinary adjudication and to relate the error to gender bias."

Id. at 715.

Plaintiff alleges that the procedures were flawed, but the facts alleged undermine the claim. Also, there is no nonconclusory allegation of gender bias. The Amended Complaint alleges that plaintiff met with Dean Cobo De Paci on October 29, 2010, at which time she scheduled plaintiff to meet a counselor, a male, "to discuss the situation that . . . [he] was having between his ex-girlfriend and current girlfriend." (Am Compl. ¶ 11.) He met with the counselor on November 1 and had a second appointment scheduled for November 12 which the plaintiff needed to reschedule. (Id. ¶ 12.) The fight took place on November 18 before he saw the counselor again. (Id. ¶ 14.) Immediately after the fight, all three students were "expelled pro tempore" by Ms. Kristine Rowe, the "Campus Operating Officer." (Id. ¶ 15.)

After the fight, Dean Cobo De Paci reviewed the video. (Id. ¶ 17.) As noted, the video was included as an exhibit to the Amended Complaint and is properly considered on the motion to dismiss. It shows plaintiff withdrawing and cocking his arm and then delivering multiple (about 5 or more) blows to the body of one of the females in rapid succession. The females appear to be locked in a fighter's embrace. The video does not show either female throwing a punch at anyone. Based upon the degree of force utilized by plaintiff, which Dean Cobo de Paci saw on the video, it was not unreasonable for her to telephone plaintiff, as she did, and request that plaintiff place his position in writing. While listening to the position of a party in a face-to-face session is one way to learn an individual's position, there is neither a flaw nor anything that bespeaks of discriminatory animus in having the person who threw the most blows state his position in writing—and not reenter the campus. Nor is it flawed or suggestive of discriminatory animus to have those who displayed less violence in the video present their positions in person. The Dean took the position that "each individual involved is treated as a separate case." (Am. Compl. Ex. I)

9

Plaintiff's written report to the Dean is characterized in the body of the Amended Complaint as describing his conduct as "not appropriate, but justified." (Am. Compl. ¶ 20.) But the actual report does not contain any admission that the conduct was inappropriate; it does purport to justify the actions and merely describes the event as "unfortunate." (Am. Compl. Ex. G.) There is no expression of remorse in plaintiff's written submission to the Dean. Just as there was nothing to suggest either flaw or bias in taking plaintiff's statement in writing, there is nothing in plaintiff's written statement to suggest either flaw or bias in making plaintiff's expulsion permanent.

Plaintiff has failed to allege facts which, if believed, would reflect gender bias. At bottom, he asserts that there were three participants in the fight, the other two were female, and the females received lesser punishment. The lesser participants told their story orally and the only person who was known to have thrown multiple punches was permitted to make his statement in writing. The Amended Complaint fails to account for the difference in kind and character of the actions observed by Dean Cobo De Paci on the video. Beyond legal labels and conclusions, he alleges no facts that would give rise to an inference of discriminatory animus.

      b.      The Selective-Enforcement Claim

For the same reason that the flawed-outcome claim fails, so too does the selective-enforcement claim. To state a claim for selective enforcement, plaintiff must allege particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency. See Yusuf, 35 F.3d at 715-716. But there is no inconsistency in punishing worse behavior with harsher discipline. Again, the Amended Complaint fails to account for the difference in kind and character of the actions observed by Dean Cobo De Paci on the video. For reasons other than

gender, plaintiff was not similarly situated to the other two participants, and therefore the selective-enforcement claim fails.

### III. Plaintiff Fails to State a Claim for Retaliation under Title IX.

Plaintiff also fails to state a plausible claim of retaliation for filing a sex-discrimination complaint. "[R]etaliation against individuals because they complain of sex discrimination is 'intentional discrimination that violates the clear terms of [Title IX].'" Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 183 (2005) (quoting Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 642 (1999). As with complaints of other types gender discrimination, a retaliation complaint "[need] not contain specific facts establishing a prima facie case of discrimination," Swierkiewicz, 534 U.S. at 506 (Title VII claim), "but only enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570. However, a plaintiff may not premise a claim of retaliation on an adverse action that the pleadings show was decided upon *before* the plaintiff engaged in the protected acts. See Murray v. New York Univ. Coll. of Dentistry, 57 F.3d 243, 251 (2d. Cir. 1995) (holding that allegations that a school failed to alter a disciplinary decision after a student introduced a sexual harassment claim were "insufficient as a matter of law to support an inference of discriminatory motivation").

In this case, plaintiff alleges that he filed an "affirmative action complaint" against Dean Cobo de Paci with Berkeley on the morning of November 30, 2011, and that Dean Cobo de Paci retaliated by expelling him permanently, via a telephone call, on the same afternoon. (Am. Compl. ¶¶ 30, 32). But plaintiff also supplies an internal email dated November 26, 2010, four days before plaintiff filed his complaint, from Dean Cobo De Paci to Edwin Hughes, in which the dean recommends that plaintiff not be allowed to return to Berkeley. (Am. Compl. Ex. H.) Because Dean Cobo De Paci had already decided plaintiff

11

should be expelled by the time plaintiff filed his complaint, and because the Amended Complaint alleges that the retaliatory actions of Berkeley were by and through the Dean, plaintiff has failed to plausibly allege that the Dean's decision was taken in retaliation for the filing of the complaint. Therefore, plaintiff fails to state a claim for retaliation in violation of 20 U.S.C. § 1681.

### IV. Plaintiff Fails to State a Claim for Copyright Infringement against Berkeley.

The Copyright Act, 17 U.S.C. § 101 et seq., grants to copyright holders the exclusive rights to, *inter alia*, display, reproduce, and distribute their works, 17 U.S.C. § 106, and creates a cause of action for infringements of those rights, 17 U.S.C. § 501.  Read generously, plaintiff's complaint alleges two infringements on his exclusive rights: first, Berkeley downloaded the fight video, distributed it within its counsel's law firm, and attached it as an exhibit in defense against plaintiff's NYSDHR complaint (the "legal defense use"); second, Berkeley downloaded from the WorldStar site and distributed the fight video through its "blackboard network" (the "Blackboard use").  (Compl. ¶¶ 39, 41 and Ex. O.)  As detailed below, these claims fail for the following reasons: the legal defense use is fair use protected by statute, and the Blackboard use is supported by conclusory allegations not entitled to presumption of truth.

#### a. The Legal Defense Use

The fair use doctrine permits others to reproduce copyrighted works for approved purposes such as criticism, reporting, and education.  See 17 U.S.C. § 107.  The statute's list of fair uses is only exemplary; the statute announces a non-exhaustive four-factor test for determining whether a use is a fair use in any given case: "[T]he factors to be considered shall include -- (1) the purpose and character of the use, including whether such use is of a commercial

nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." Id. These factors are not treated in isolation; "all are to be explored, and the results weighed together, in light of the purposes of copyright." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577-78 (1994).  Using this analysis, courts have repeatedly held that the reproduction of copyrighted works as evidence in litigation is fair use.  See Jartech, Inc. v. Clancy, 666 F.2d 403, 406-07 (9th Cir. 1982); Den Hollander v. Swindells-Donovan, No. 08-Civ-4045 (FB) (LB), 2010 U.S. Dist. LEXIS 22309, *8-12 (E.D.N.Y. March 11, 2010), *aff'd sub nom.* Hollander v. Steinberg, 419 Fed. Appx. 44 (2d Cir. 2011); see also H.R. Rep. No. 94-1476, at 19 (1976) (contemplating as fair use "reproduction of a work in legislative or judicial proceedings or reports"); 4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.05[D] (2011) ("[I]t seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence.")

In this case, Berkeley relied on the video of the classroom fight in deciding on the discipline to be imposed upon plaintiff.  (Compl. ¶ 18 and Ex. H.)  Thereafter, plaintiff alleged before the NYSDHR that the expulsion was based on gender.  (Compl. Ex. P.)  Berkeley attached the video to its answer "to demonstrate that [it] had a legitimate, nondiscriminatory reason for how it treated the plaintiff."  (Compl. ¶ 41.)  Finally, plaintiff, having lately obtained copyright of the video from its author for $1, claimed that Berkeley's submission of the video—to defend against plaintiff's complaint—was copyright infringement.  (Compl. ¶¶ 33, 39-41 and Ex. L.)  In the language of the four-factor test, then, this was (1) a limited, defensive, noncommercial use prompted by plaintiff's commencement of litigation; (2) the work itself is a real-time video of an

13

unchoreographed fight in one of Berkeley's classrooms; (3) the entire video was used; (4) and the submission to the NYSDHR could not affect the market for the video, if any. Of these four factors, the only one that could favor plaintiff is the third—the portion used—because Berkeley submitted the entire video. However, the proper inquiry is whether the portion used was "reasonable in relation to the purpose of the copying." Campbell 510 U.S. at 586. Here, using the whole video was reasonable, because the video comprises little more than the fight, and plaintiff's behavior during the fight was important to Berkeley's decision to expel plaintiff. More importantly, taken as a whole, the facts and factors demonstrate that the use was a circumscribed, noncommercial use necessitated by plaintiff's actions. Under such circumstances, the use was fair use within the meaning of 17 U.S.C. § 107.

Fair use is an affirmative defense, see Campbell, 510 U.S. at 590, and is therefore not normally an appropriate grounds for dismissing a claim on a Rule 12(b)(6) motion. However, the Second Circuit has held that "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). For the reasons discussed above, the defense of fair use appears on the face of plaintiff's Amended Complaint. Therefore, plaintiff fails to state a claim of infringement for the legal defense use of the fight video.

   b. <u>The Blackboard Use</u>

Plaintiff also fails to a state a claim of infringement for the Blackboard use. Plaintiff supports this claim of infringement only with conclusory allegations. Although a court must assume the veracity of "well-pleaded factual allegations" when reviewing a motion to dismiss, Iqbal, 129 S.Ct at 1950, a court is not "bound to accept conclusory allegations," Rolon

v. Henneman, 517 F.3d 140, 149 (2d Cir. 2008) (Sotomayor, J.) (internal quotations omitted). As applied to a claim of copyright infringement, this means "it is axiomatic that plaintiff's claims cannot rest on inchoate and conclusory accusations of unauthorized copying." Broughel v.Battery Conservancy, No. 07-Civ-7755 (GBD), 2009 U.S. Dist. LEXIS 35048 (S.D.N.Y. Mar. 30, 2009) (dismissing infringement claims against defendant websites because plaintiff failed to allege any specific infringing acts).

The entirety of plaintiff's remaining allegation of copyright infringement is that "from on or about December 4, 2010, to on or about December 16, 2010, Defendant, Berkeley, acting through its counsel Mr. David F. Bayne, from the law offices of Kavanagh Maloney & Osnato LLP" downloaded a copy of the fight video from worldstarhiphop.com and "distributed the work through its blackboard network and [his law firm]." (Compl. ¶ 39.) As conclusory as this allegation is on its face, it can be further trimmed. First, distribution within the law firm is attributable to the fair use of defending against plaintiff's NYSDHR complaint. Second, to the degree distribution through the "blackboard network" means posting of the video on a site viewable to authorized users, this allegation is irreconcilable with plaintiff's other allegation that Mr. Seymour was responsible for publishing the work by "distributing copies of the work . . . via Blackboard Services" on November 18, 2010  (Compl. ¶ 14). If the video was posted on Blackboard—if such posting is possible on Blackboard—the Amended Complaint alleges that it is traceable to Mr. Seymour. The remaining allegation is the bare recitation that, from the day that plaintiff obtained copyright up to the day plaintiff filed his first complaint, Berkeley downloaded and distributed the work. This conclusory allegation is not entitled to a presumption of truth and does not account for any fair use of the video for the purposes outlined above. Therefore, plaintiff's Blackboard use claim fails as well.

> V.     This Court Declines to Exercise Supplemental
>        Jurisdiction over Plaintiff's State Law Claims

Section 1367 of title 28 of the United States Code governs the exercise of supplemental jurisdiction and states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Section 1367(c)(3) states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." Although section 1367(c)(3) is couched in permissive terms, the Second Circuit has made clear that the Court's discretion "is not boundless." Valencia *ex rel.* Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts balance the values of judicial economy, convenience, fairness, and comity – the 'Cohill factors.'" Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Carneigie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n.7. As the plaintiff's federal claims are herein dismissed, the plaintiff's state law claims are dismissed without prejudice. None of the Cohill factors supports the exercise of supplemental jurisdiction over plaintiff's remaining claim.

## LEAVE TO AMEND

Plaintiff received notice in the form of the pre-motion letter from defendant Berkeley of the basis on which Berkeley believed the original Complaint was subject to dismissal. (Docket # 14.) He waited until he received Berkeley's motion to dismiss (Docket # 15) to then file an Amended Complaint (Docket # 26). He received a further pre-motion letter in response to the Amended Complaint setting forth the bases for the second motion. (Docket # 30.) He never sought leave to amend further. Because plaintiff has had ample opportunity to assert his strongest claim, leave to amend is denied.

## CONCLUSION

For the reasons outlined above, defendant Berkeley's motion to dismiss (Docket # 26) is GRANTED and leave to amend is DENIED. The Clerk is directed to terminate the duplicate motion to dismiss appearing on the docket. (Docket # 37.) Defendant's counsel is directed to provide to *pro se* plaintiff Scott copies of all unpublished opinions cited herein.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
October 24, 2011

17