UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SCOTT,<br><br><br><br><br><br><br><br><br><br>WORLD STAR HIP HOP, INC., | ))<br>))<br>))<br>)) Case No. 10-CV-09538-PKC-RLE<br>))<br>)) **POINTS AND AUTHORITIES IN**<br>)) **SUPPORT OF DEFENDANT'S**<br>)) **MOTION TO DISMISS THE**<br>)) **AMENDED COMPLAINT IN ITS**<br>)) **ENTIRETY**<br>))<br>))<br>))<br>)) |

**STATEMENT OF FACTS**

According to the Amended Complaint, in November of 2010, Berkeley College student Omar Seymour video recorded Plaintiff Robert Scott in a physical altercation with his former girlfriend in their classroom at Berkeley College. Amended Complaint ("Am. Compl.") at ¶14. Seymour sent the video to worldstarhiphop.com for posting. Am. Compl. at ¶16. Berkeley College expelled Plaintiff for his role in the fight. Am. Compl. at ¶34.

On December 3, 2010, Plaintiff purchased copyright rights in the cell phone video from Mr. Seymour and registered his interests in the video with the Copyright Office the next day. Am. Compl. at ¶¶33, 35. Plaintiff then sent a letter to worldstarhiphop.com demanding that "all infringing content" be removed, that Plaintiff receive credit for the video when individuals visit the website, that the site pay a licensing fee, that use and distribution cease, that "unused or undistributed copies" be "deliver[ed]-up" for

1

destruction, and that the site confirm in writing it would not use the work in the future without prior written authorization. Am. Compl. at ¶37, Ex. N. The letter does not contain a statement under penalty of perjury that Plaintiff is the copyright owner. See 17 U.S.C. 512(c)(3)(A)(vi). Nor does the letter explain how Plaintiff came to hold rights in the video.

Plaintiff filed a copyright infringement action against Berkeley College and World Star Hip Hop, Inc. on December 16, 2010. (Dkt. 2) He filed an amended complaint on May 24, 2011 adding discrimination counts (against Berkeley College) as well as some state law invasion of privacy claims. (Dkt. 26). The only claims articulated against Defendant World Star Hip Hop Inc. are the right to privacy claim under New York Public Law sec. 50 (Count 1) and the copyright infringement claim (Count 5).

This court granted Berkeley College's motion and dismissed the case against it in its entirety and with prejudice on October 25, 2011. (Dkt. 46.) Plaintiff is in the process of appealing that decision. (Dkt. 47.) Defendant World Star Hip Hop, Inc. only addresses the counts against it, Count 1 and Count 5, below, but dismissal of those counts should resolve all claims Plaintiff makes against this moving Defendant and granting this motion should result in complete dismissal of this case.

I. **WHERE, AS HERE, FEDERAL STATUTORY IMMUNITY BARS ALL OF A PLAINTIFF'S CLAIMS, THE COURT SHOULD GRANT A MOTION TO DISMISS.**

Under Federal Rule of Civil Procedure 12(b)(6), a court should grant a motion to dismiss where the plaintiff is unable to articulate enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A

claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Where, as here, federal statutory immunity bars all of Plaintiff's claims, and further amendment is futile, the Court should dismiss without leave to amend as a matter of law. *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir.2003)

## II. PLAINTIFF'S COPYRIGHT CLAIM IS FORECLOSED BY THE DIGITAL MILLENNIUM COPYRIGHT ACT SAFE HARBOR PROVISIONS, 17 U.S.C. 512.

Plaintiff is foreclosed from obtaining any relief for copyright infringement from worldstarhiphop.com under the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"). Section 512 of the DMCA provides that "a service provider shall not be liable for monetary relief … for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider" unless the copyright owner can show actual knowledge of infringement or awareness of facts or circumstances from which infringing activity is apparent. 17 U.S.C. 512(c)(1)(A). In the absence of such information, if the provider takes the material down after having received a statutorily compliant take down notice, the provider is immune from liability. 17 U.S.C. 512(c)(3); *Viacom Intern. Inc. v. YouTube, Inc.,* 718 F.Supp.2d 514 (S.D.N.Y. 2010).

Worldstarhiphop.com meets every element required for immunity under the DMCA safe harbor. First, the site posted the video "at the direction of a user", specifically at the direction of Mr. Seymour in November 2010. Am. Compl. at ¶16.

3

Second, the site had no actual knowledge that the video was infringing. To the contrary, at the time of posting in November 2010, hosting the video was inarguably lawful. Am. Compl. at ¶33 (Seymour held exclusive copyright rights in the video until December 3, 2010). In recognition of this fact, the Amended Complaint charges copyright infringement only between the dates of December 4 and December 16, 2010. Am. Compl. at ¶38.

Nor does the Amended Complaint identify any facts or circumstances from which infringing activity could have become apparent to Defendant. Indeed, the face of the Amended Complaint shows why the website had good reason to believe that Seymour, not Plaintiff, owned the copyright. Plaintiff appears in the video, and thus could not have created the work, and worldstarhiphop.com had obtained the video from and posted it at the behest of the creator and original copyright owner. Am. Compl. at ¶16.

As a matter of law, Plaintiff's letter on December 4, 2010 cannot be used as evidence of actual knowledge of infringement or as evidence of such "facts and circumstances" which would take the worldstarhiphop.com site outside of the DMCA immunity. The DMCA explicitly states that a notice from a copyright owner that substantially fails to comply with the statutory requirements may not be so considered:

> [A] notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to comply substantially with the provisions of subparagraph (A) **shall not be considered** under paragraph (1)(A) in determining whether a service provider has **actual knowledge** or **is aware of facts or circumstances from which infringing activity is apparent**. 17 U.S.C. 512(3)(b)(i) (emphasis added).

As explained recently by the Ninth Circuit, this DMCA exclusionary rule:

4

> prohibits consideration of substantially deficient § 512(c)(3)(A) notices for purposes of 'determining whether a service provider has actual knowledge or is aware of facts and circumstances from which infringing activity is apparent.' 17 U.S.C. § 512(c)(3)(B)(i); *see also* H.R. Rep. No. 105- 551, pt. 2, at 56 (explaining this provision); Nimmer § 12B.04(B)(4)(c) ("[T]he copyright owner bears the burden of demonstrating knowledge independently of the failed notification."). *UMG Recordings v. Shelter Capital Partners*, *21083

Due to this exclusionary rule, Plaintiff may not use and this Court may not consider Plaintiff's letter as evidence of any kind of actual or constructive guilty knowledge, because the letter failed to substantially comply with the dictates of the DMCA.

Third, Plaintiff's letter and email did fail to substantially comply with the elements required for a DMCA takedown notice. Plaintiff's December 4, 2010 letter does not contain the required statement under oath that Plaintiff was the lawful copyright owner. Am. Compl. at 37; *Id.* at Exhibit N; See 17 U.S.C. 512(c)(3)(vi) (notification must include "a statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed"); *Hendrickson v. eBay, Inc.*, 165 F.Supp.2d 1082 (C.D. Cal. 2001) (notice invalid where owner never attested to good faith and accuracy of his claim). Plaintiff's failure to verify copyright ownership is particularly salient where, as here, Plaintiff had non-copyright reasons for wanting to suppress the video, specifically the Berkeley College disciplinary action, and all facts in the possession of the hosting company are consistent with the submitting party, (in this case Mr. Seymour), and not the letter writer, being the copyright owner. The letter also asked for a licensing fee and author credit for the video, both of which are inconsistent with a takedown demand.

Thus, the face Amended Complaint establishes that Defendant posted the material at the behest of copyright owner and user Seymour, never received a DMCA compliant takedown notice attesting to Plaintiff's copyright ownership, and had no other facts in its possession that would suggest that its continued hosting of the video was infringing. Therefore, as a matter of law suitable for decision upon a Motion to Dismiss, Defendant "shall not be liable for monetary relief, or, … for injunctive or other equitable relief, for infringement of copyright…". 17 U.S.C. 512(c).

## II.  THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. 230, IMMUNIZES DEFENDANT FROM ALL OF PLAINTIFF'S NON-INTELLECTUAL PROPERTY CLAIMS.

Under the Communications Decency Act, 47 U.S.C. 230, ("CDA 230" or "Section 230"), a website cannot be held liable for defamation or other state law claims arising from its hosting content provided by third parties. Section 230 provides:

> *No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.*

In short, CDA 230 preempts any state law – including imposition of tort liability – if the defendant is (1) a "provider or user of an interactive computer service"; (2) the complaint seeks to hold the defendant liable as a "publisher or speaker"; and (3) the action is based on "information provided by another information content provider" (47 U.S.C. § 230(c)(1)). *Shiamili v. The Real Estate Group*, 17 N.Y.3d 281, 286, 952 N.E.2d 1011, 1015 (2011).

In passing section 230, Congress acknowledged that, "[t]he Internet . . . offer[s] a forum for a true diversity of political discourse, unique opportunities for cultural

6

development, and myriad avenues for intellectual activity" (47 U.S.C. § 230(a)(3)), and that it has "flourished, to the benefit of all Americans, with a minimum of government regulation" (47 U.S.C. § 230(a)(4)). Further, "it is the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation" (47 U.S.C. § 230(b)(2)). Both state and federal courts around the country have "generally interpreted Section 230 immunity broadly, so as to effectuate Congress's 'policy choice . . . not to deter harmful online speech through the . . . route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages'". *Universal Communications Sys., Inc. v Lycos, Inc.*, 478 F3d 413, 418 (1st Cir. 2007), *cited by Shiamili*, 17 N.Y.3d at 288, 952 N.E.2d at 1017.

An interactive computer service is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server… ." 47 U.S.C. 230(f)(2) *Murawski v. Pataki*, 514 F.Supp.2d 577, 591 (S.D.N.Y. 2007) (search engine is an interactive computer service). Defendant provides a website. Am. Compl. at ¶¶3,16. Websites are interactive computer services under section 230. *See Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 n. 6 (9th Cir. 2008) ("[T]he most common interactive computer services are websites.").

Since Defendant provides an interactive computer service, Plaintiff's claims purporting to treat Defendant as the publisher or speaker of information provided by another party, specifically by Mr. Seymour, fail. *Gucci Am., Inc. v. Hall & Assocs.*, 135

7

F.Supp.2d 409, 417 (S.D.N.Y. 2001) (citing legislative history of the CDA); *See also Gentry v. eBay, Inc.,* 99 Cal.App.4th 816, 829-30 (2002) (websites have immunity for the "exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content"); *Phan v. Pham*, 182 Cal.App.4th 323, 327-28 (2010) (a website operator's affirmative decision to publish information provided by another is immune under Section 230); *Jurin v. Google, Inc.,* 695 F.Supp.2d 1117, 1122 (E.D. Cal. 2010) ("[s]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process"); *Shiamili*, 17 N.Y.3d at 289, 952 N.E.2d at 1017. ("the statute does not differentiate between 'neutral' and selective publishers").

Indeed, New York State's highest court has held that CDA 230 immunity applies against defamation claims, even where the provider selected and edited content submitted by a third party. *Shiamili*, 17 N.Y.3d at 293, 952 N.E.2d at 1020.

Section 230 preempts "any State of local law that [seeks to impose liability] inconsistent with this section." 47 U.S.C. 230(e)(3). The only exceptions are intellectual property law and federal criminal law. 47 U.S.C. 230(e)(1), (2). Plaintiff's copyright claim fails as a matter of law under the DMCA safe harbor. Plaintiff's N.Y. Civil Rights Law §50 (Count 1), the only other claim that appears to be asserted against this Defendant, seeks to treat Defendant as the speaker or publisher of the video. It is thus categorically foreclosed as a matter of law by Section 230.

Worldstarhiphop.com is immune from any and all state law privacy claims for posting the video of Plaintiff's coed brawl. *See e.g. Prickett v. InfoUSA, Inc.*, 561

8

F.Supp.2d 646 (E.D. Tex. 2006) (Owner of a website which published plaintiffs' names, addresses and telephone numbers under the heading "Entertainers--Adult" was protected under CDA 230 from liability on plaintiffs' defamation and invasion of privacy claims). If a third party willingly provides the essential published content, the interactive service provider receives full immunity. *Id.*

Nor is worldstarhiphop.com liable for failing to take the video down after Plaintiff complained. "[D]eciding whether or not to remove content … falls squarely within [the] exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity." *Murawski*, 514 F.Supp.2d at 591; *Novak v. Overture Services, Inc.*, 309 F.Supp.2d 446, 452-53 (E.D.N.Y. 2004) (no liability for failure to remove objectionable statements).

## CONCLUSION

On its face and as a matter of law, Plaintiff's Amended Complaint establishes Defendant's categorical and meritorious legal defenses to civil liability for all claims at issue here. No amendment can save Plaintiff's complaint. Thus, the Amended Complaint should be dismissed in its entirety and with prejudice.

Dated: January 12, 2012	Signature: _____/s/_____

                                  Jennifer Stisa Granick
(Cal. Bar No. 168423, *pro hac* granted)
350 Townsend Street, Ste. 612
San Francisco, CA  94107
(415) 684-8111 (tel)
(630) 733-7653 (fax)
granick@worldstarhiphop.com

Scott Zarin (N.Y. Bar No. SZ-7134)
Zarin & Associates P.C.
1700 Broadway, Suite 3100
New York, NY 10019
Tel: (212) 580-3131
Fax: (212) 580-4393
scottzarin@copyrightrademarkcounsel.com

Attorneys for Defendant
World Star Hip Hop, Inc.

10