UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SCOTT, | )) )) )) |
| | )) Case No. 10-CV-09538-PKC-RLE |
| | )) |
| | )) **REPLY IN SUPPORT OF** |
| | )) **DEFENDANT'S MOTION TO** |
| | )) **DISMISS THE AMENDED** |
| | )) **COMPLAINT IN ITS** |
| | )) **ENTIRETY** |
| WORLD STAR HIP HOP, INC., | )) |
| | )) |

## I. THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT AND CANNOT ALLEGE ANY VALID CLAIMS

Every complaint must state a claim for relief that is "plausible" not just "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 557) (internal quotations omitted). A court should examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

Although courts are to allow *pro se* litigants great latitude in their pleadings, the *Twombly* and *Iqbal* plausibility standard still applies to a *pro se* complaint. *Purdie v. City of New York*, No. 10 Civ. 5802, 2011 U.S. Dist. LEXIS 27866, at *4-6 (S.D.N.Y. March 15, 2011). Where, as here, further amendment is futile, the Court should dismiss without leave to amend as a matter of law. *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

1

II. **DEFENDANT'S DEFAULT STATUS DOES NOT NEGATE WORLDSTARHIPHOP.COM'S DEFENSES UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT OR THE COMMUNICATIONS DECENCY ACT.**

Plaintiff's does not contest that Defendant met all the statutory requirements for the safe harbor under the Digital Millennium Copyright Act section 512 (DMCA) or for immunity under the Communications Decency Act (CDA).

Instead, Defendant's opposition to the motion to dismiss depends on the fact that Defendant World Star Hip Hop, Inc. was in default at the time of the facts alleged. Plaintiff cites Defendant's default status as the fundamental reason Defendant was not a "service provider" under the meaning of the DMCA. See Affirmation in Opposition, Dkt. 62, para. 5 ("Because the Defendant, WorldStarHipHop, Inc., was defunct, in combination with not designating an agent to receive notifications of claimed infringement, by making available on its website in a location accessible to the public, and by providing to the United States Copyright Office the name, address, phone number and electronic mail address of the Defendant, WorldStarHiphop, Inc., designated agent; Defendant, WorldStarHiphop, Inc., was not entitled to the limitations on liability established in the DMCA for copyright infringement claimed by the Plaintiff within the Amended Complaint. (sic)".) The default status is the *sole* reason Plaintiff can come up with for why the CDA immunity might not apply. See Affirmation in Opposition, Dkt. 62, para. 8. ("[T]he Defendant, WorldStarHipHop, Inc., wasn't acting as a "provider or user of an interactive computer services" by reason of its defunct status when the video was posted to its website to immunized the Defendant, WorldStarHiphop, Inc., as an

2

entity under the CDA as a provider of an interactive computer service (sic).")

    A.    *NEVADA LAW*

Under Nevada law, a default means only that the corporation has failed to pay its annual fee and/or file a yearly statement of its officers. NRS 78.170(1) ("Each corporation which is required to make a filing and pay the fee prescribed in NRS 78.150 to 78.185, inclusive, and which refuses or neglects to do so within the time provided shall be deemed in default.")  Only after a year has passed does the State of Nevada revoke the corporation's right to conduct business.  NRS 78.175(2) ("On the first day of the first anniversary of the month following the month in which the filing was required, the charter of the corporation is revoked and its right to transact business is forfeited."). Plaintiff makes no allegation and offers no evidence that World Star Hip Hop, Inc. was in default for a year or that its corporate charter was ever revoked.  Indeed, the corporate charter never was revoked, as is apparent from the fact that the company is currently in good standing with the State of Nevada.  *See* <u>Nevada Secretary of State Entity Details Database</u>, available at http://nvsos.gov/sosentitysearch/CorpDetails.aspx?lx8nvq=C%252bytsV6JJoXJDFyLSi%252byIg%253d%253d&nt7=0.

Even if Defendant's charter were revoked, the end result would be that Plaintiff has sued the wrong entity, not that the entity he sued is miraculously liable for his claims despite specific federal statutes to the contrary. *See* NRS 78.175(5) (Where charter revoked, corporate assets are "held in trust by the directors of the corporation as for insolvent corporations, and the same proceedings may be had with respect thereto as are

3

applicable to insolvent corporations.").

### B. DMCA

The DMCA safe harbor protects online service providers from monetary liability, and provides copyright owners with only limited injunctive relief, inapplicable here because the website has removed the video in question. See *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1141 (N.D. Cal. 2008).

Under the DMCA, if worldstarhiphop.com is entitled to the safe harbor, then its corporate parent cannot be liable for damages, regardless of its regulatory status under state law. There simply are no damages owed, for which the corporate parent could be held responsible.

Without question, worldstarhiphop.com is a service provider under the DMCA. The definition of service provider for 17 U.S.C. 512(c) is located at 17 U.S.C. 512(k)(1)(B):

> As used in this section, other than subsection (a), the term "service provider" means a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A).

"A plain reading of [17 U.S.C. § 512(k)] reveals that 'service provider' is defined so broadly that we have trouble imagining the existence of an online service that would not fall under the definitions…." *In re Aimster Copyright Litig.*, 252 F.Supp.2d 634, 658 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003). Amazon, eBay, and Aimster all qualify as "service providers" under this definition. *See Corbis v. Amazon.com*, 351 F.Supp.2d 1090 (W.D. Wash. 2004) (holding that Amazon meets DMCA definition of service provider); *In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003)

(affirming district court ruling that Aimster is a service provider); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1087 (C.D. Cal. 2001) (acknowledging the broad definition of a service provider and stating that eBay "clearly" falls within this definition).

      Most recently, various courts have affirmed that video websites are service providers under the DMCA. The Ninth Circuit so held recently in *UMG Recordings, Inc. v. Shelter Capital Partners*, 2011 U.S. App. LEXIS 25168, 101 U.S.P.Q.2D (BNA) 1001 (9th Cir. 2011) ("*Shelter Capital*"). In *Shelter Capital*, the plaintiff admitted that the defendant's video hosting and playback activities met the definition of service provider, but argued that particular aspects of the way it conducted its business brought the business outside the role a mere service provider plays. *Id.* at *15 n.4. The Ninth Circuit rejected the argument, found that the video service in question was a service provider, met the DMCA safe harbor requirements and upheld the dismissal. This Court has held similarly with regard to a video hosting website in *Viacom v. YouTube*, 718 F. Supp. 2d 514, 518 (S.D.N.Y. 2010) ("*YouTube*") ("As a 'provider of online services or network access, or the operator of facilities therefor' as defined in 17 U.S.C. § 512(k)(1)(B), YouTube is a service provider for purposes of § 512(c)."), agreeing with the parties and the Central District of California in *IO Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1143 (C.D. Cal. 2008) ("Io does not dispute that Veoh is a "service provider" as defined by DMCA Section 512(k)(1)(B)."). In each of these cases, the parties went on to argue whether the provider's specific conduct or failures to act brought it outside the DMCA protection and the court found the video hosting site was protected.

      Here, Plaintiff makes no such arguments, but asserts, wrongly, that

worldstarhiphop.com is not a service provider in the first instance because its alleged corporate parent was in default. Plaintiff does not and cannot distinguish the worldstarhiphop.com service from those this Court and others found to be covered in *Shelter Capital, YouTube* and *Io Group*. Worldstarhiphop.com, like YouTube, Veoh, Amazon, eBay and many other sites, is a service provider under the DMCA. The default status of a parent corporation, is not relevant to the definition of service provider. The statute makes no reference to and no cases have ever inquired into the corporate structure or status of the defendant in assessing whether the safe harbor lies. Plaintiff cites no authority in support of his proposition.

      Plaintiff's secondary assertion in his effort to avoid the federal safe harbor is that Defendant did not designate or publish contact information for an agent to receive notifications of claimed infringements. Opp. at para. 5. In assessing the complaint, a court may "consider documents incorporated by reference or attached to the complaint as exhibits, documents the plaintiff knew of or possessed and relied upon in framing the complaint, and items of which judicial notice maybe taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). The Amended Complaint contains no allegations about whether Defendant designated an agent. To the contrary, the document suggests that worldstarhiphop.com published the agent for notification of copyright complaints on its website and that Plaintiff found and used that information when he made his written complaint of infringement. See Exhibit N, letter from Plaintiff to the worldstarhiphop.com address on Bell Road in Sun City, AZ.

      Nor should this Court take use Plaintiff's reference to the Copyright Office's

published list of Designated Agents as proof that worldstarhiphop.com did not make such a designation.  Federal Rule of Evidence 201(b) permits judges to take judicial notice of facts (1) that are "generally known within the territorial jurisdiction of the trial court" or (2) that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned".  Whether a business designated an agent for receipt of DMCA complaints is not a fact susceptible to judicial notice.  While the Copyright Office is supposed to keep and publish a list of designated agents, by the agency's own assessment, the Copyright Office Service Provider List is out-of-date and incomplete.  See 37 CFR Part 201  "Designation of Agent To Receive Notification of Claimed Infringement" *available at* http://www.gpo.gov/fdsys/pkg/FR-2011-09-28/html/2011-24780.htm ("The interim regulations [establishing the designated agent database] have functioned satisfactorily for many years, but issues have arisen with respect to the currency and accuracy of the information in the directory.")

In sum, the face of Plaintiff's Amended Complaint demonstrates that worldstarhiphop.com is a service provider under the DMCA and has met all the requirements for that safe harbor.  Plaintiff's only available claim for injunctive relief is mooted by the fact that the video has long been taken down.  Therefore, this claim should be dismissed with prejudice.

    C.    CDA

Plaintiff admits that under the Communications Decency Act, 47 U.S.C. 230, ("CDA 230" or "Section 230"), a website cannot be held liable for New York state law privacy claims arising from its hosting content provided by third parties. Opposition at 7.

That the corporate defendant was in default is irrelevant, as discussed above.

Plaintiff asserts that by "provid[ing] access to the video that displayed the Plaintiff's, portrait, picture, image and likeness without the Plaintiff's written consent for commercial usage", worldstarhiphop.com was not entitled to the CDA safe harbor. Opposition at 10. Worldstarhiphop.com provided access to a video provided by Mr. Seymour. Seymour is the content provider and worldstarhiphop.com provides an interactive computer service. Plaintiff seeks to impose liability for "providing access" to Seymour's video. That is exactly the conduct that the CDA immunizes. For example, in *Novak v. Overture Servs.,* 309 F. Supp. 2d 446 (E.D.N.Y. 2004), the *pro se* plaintiff sued Google for failing to remove objectionable material from its message boards. The court held that failure to remove material provided by others is immunized by the CDA. *Id.* at 452-53.

### III.   THIS COURT CAN DISMISS ON DMCA AND CDA GROUNDS AT THIS PROCEDURAL STAGE

A defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion where, as here, the defense appears on the face of the complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998), *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 426 (2d Cir. 2008). Copyright claims may be disposed of on a motion to dismiss. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2008) ("Although a plaintiff's allegations are generally taken as true, the court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim.").

This rule also applies to claims subject to CDA defenses. In *Novak v. Overture Servs.,* 309 F. Supp. 2d 446 (E.D.N.Y. 2004)*,* the Eastern District of New York dismissed a *pro se* case against Google on CDA grounds. The court noted that while CDA defenses are often decided on summary judgment, the plaintiff had not requested any "further notice or discovery to prepare for an opposition to this affirmative defense." *Id.* at 452. Therefore, the Court addressed the motion on its merits and dismissed at the Motion to Dismiss stage. *Id.* It is proper to evaluate a Section 230 immunity defense in the context of a 12(b)(6) motion where the necessary facts are apparent on the face of the complaint and the immunity available under the CDA precludes a plaintiff from stating a claim. *Gibson v. Craigslist, Inc.*, 2009 U.S. Dist. LEXIS 53246, *3 (S.D.N.Y 2009) (claim that site failed to block access to a gun advertisement dismissed pursuant to 12(b)(6) and 47 U.S.C. 230), citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 550 (E.D. Va. 2008).

## CONCLUSION

On its face and as a matter of law, Plaintiff's Amended Complaint establishes Defendant's categorical and meritorious legal defenses to civil liability for the copyright infringement and state privacy law claims at issue here. Thus, the Amended Complaint should be dismissed in its entirety.

Dated: February 23, 2012		Signature:   *Jennifer Granick*

                                      Jennifer Stisa Granick
                                      (Cal. Bar No. 168423, *pro hac* granted)
                                      350 Townsend Street, Ste. 612
                                      San Francisco, CA  94107
                                      (415) 684-8111 (tel)
                                      (630) 733-7653 (fax)
                                      granick@worldstarhiphop.com

                                      Scott Zarin (N.Y. Bar No. SZ-7134)
                                      Zarin & Associates P.C.
                                      1700 Broadway, Suite 3100
                                      New York, NY 10019
                                      Tel: (212) 580-3131
                                      Fax: (212) 580-4393
                                      scottzarin@copyrightrademarkcounsel.com

                                      Attorneys for Defendant
                                      World Star Hip Hop, Inc.